## THE PEOPLE v. WILLIAM McLEAN.

*Criminal law—Resisting officer—Information—Arrest—Warrant— Misdemeanor.*

1. An allegation in an information that a warrant "was issued by a justice of the peace," is not tantamount to averring that "it was issued by lawful authority."
2. The arrest of a person for a misdemeanor, after the commission of the act, cannot be made without a proper warrant.
3. In cases of misdemeanors, the sheriff must be present either in sight or hearing, directing the arrest, to justify a person *not* armed with a warrant to make the arrest.

Error to Mackinac.   (Steere, J.)   Argued January 26, 1888.   Decided February 2, 1888.

Respondent was convicted of the offense of resisting an officer, and sentenced to State prison for two years.  Judgment reversed and prisoner discharged.  The facts are stated in the opinion.

*James J. Brown,* for respondent.

*Moses Taggart,* Attorney General, and *Henry Hoffman,* prosecuting attorney, for the people.

CHAMPLIN, J.   McLean was convicted in the circuit court for the county of Mackinac, for resisting an officer in attempting to serve a warrant upon him, and was sentenced to be imprisoned two years in the State prison.

The statute (How. Stat. § 9257) enacts:

" If any person shall knowingly and willfully obstruct, resist, or oppose any sheriff, * * * or other officer or person duly authorized, in serving or attempting to serve or execute any process, * * * issued by lawful authority,. * * · * every person so offending shall, on conviction thereof, be punished," etc.

The information sets out that respondent—

" Did knowingly and willfully obstruct, resist, assault, and oppose one Peter A. Paquin, an under-sheriff in and for said county of Mackinac, in his, said Peter A. Paquin's, serving and attempting to serve a warrant for the arrest of William McLean, he, said William McLean, being charged in said warrant with the offense of assault and battery, said warrant being issued by Robert Rutherford, a justice of the peace in and for the city of St. Ignace, against the form of the statute in such case made and provided, and against the peace and dignity of the people," etc.

The information was objected to upon the trial, for the reason that it does not appear therefrom that the warrant was issued by lawful authority, and that the allegation that it was issued by Robert Rutherford, a justice of the peace, is not equivalent to the words of the statute defining the offense.

There are two things which are necessary to justify an arrest upon a warrant:

1. A warrant good upon its face.
2. An authority in the person who undertakes to act under it. *Drennan v. People,* 10 Mich. 183.

A justice of the peace has no lawful authority to issue a warrant to arrest a person unless upon the complaint on oath of some person showing that an offense has been committed, and that there is reasonable ground to believe that the accused committed the offense. The allegation in the statute, "made or issued by lawful authority," includes the jurisdictional facts and steps which authorize the person or body who makes the order or issues the warrant to act. It is true that

68 MICH.—31.

no officer is bound to look behind a warrant good on its face, issued by an officer who *prima facie* has a right to issue warrants.

In statutory offenses, every essential element of the crime as defined by the statute must be averred in the information, either in the words of the statute, or in language substantially equivalent. *Hall v. People*, 43 Mich. 417 ( 5 N. W. Rep. 449) ; *People v. Husted*, 52 Id. 624 (18 N. W. Rep. 388.)

If we go back into the history of officers known as justices of the peace, we shall find that originally they were not authorized to issue warrants for the apprehension of offenders. They were first instituted in England in 1326, and their duties were described in the most general terms. By 1 Edw. III. *c.* 16, they "were assigned to keep the peace;" and by 34 Edw. III. *c.* 1, they were empowered "to take and arrest all those that they may find by indictment or suspicion, and put them in prison." This was in 1360. But neither in these or in any earlier statutes is there any authority conferred upon them to take an information as to the commission of a crime, and issue a summons or warrant for the apprehension of the suspected person. 1 Steph. Hist. Crim. Law, 190.

The same learned author states that the statutes above quoted gave them no other authority for the apprehension of offenders than was by the common law inherent in every constable, and indeed in every private person. The practice of issuing warrants by justices of the peace came into use by degrees. But their authority to do so was disputed for centuries, and the subject formed a bone of contention between those eminent jurists, Coke and Hale, the former maintaining against such authority and the latter in favor. The granting of warrants, although recognized by various statutes, was not finally set upon an indispensable statutory foundation in England until the enactment of 11 and 12 Vict. *c.* 42, in 1848.

The authority of justices of the peace in this State must

be found in the Constitution and statutes enacted thereunder, and, as before stated, they can only issue a warrant upon a complaint on oath. To allege, therefore, in the information, that a warrant was issued by a justice of the peace, is not tatamount to averring that it was issued by lawful authority; for the authority is not and never was inherent in the officer, but is conferred under the statute by virtue of the complaint under oath.

It appears from the testimony returned in the bill of exceptions that on the night of the twenty-third of August, 1887, L. J. Monteith was sheriff of Mackinac county, and Peter A. Paquin was under-sheriff; that about 10 o'clock in the evening of that day, Justice Rutherford handed the sheriff a warrant for assault and battery against McLean in front of Rutherford's office; that Peter A. Paquin was then present, and the sheriff told him to get into a hack, and go up to what was known as " Red Annie's," a house of ill fame, by the road, and arrest McLean if he found him there; that he would take another direction by the railroad track, and go to another house of ill fame, and search for McLean there; that the sheriff had the warrant with him, and that Paquin had no warrant; that these houses of ill fame were about 80 rods apart; that he and the under-sheriff separated, the sheriff going up the railroad track, and the under-sheriff going in a hack in another direction.

Paquin arrived at " Red Annie's," found the door open, and a number of persons in the room. He saw McLean in there, and went in, and laid his hand on McLean's shoulder, and said:

" McLean, I want you. I have got a warrant for you; you are my prisoner."

McLean then pulled a revolver from his right-hand coat pocket, and pointed it at Paquin's head, and said:

" Get out, you — — —, or I will blow your brains out."

Paquin did not know whether the revolver was cocked or

loaded, but he backed out of the door, McLean following him with the revolver, pointed at him, saying:

"Get out; get out; get out of the house, or I will kill you."

About five minutes after he got out he heard the report of a revolver, but who fired it he did not know. He started to find the sheriff, and met him coming a short distance from the house. He did not tell McLean that he was an officer, and had no uniform or badge of office on. He had no personal acquaintance with McLean, and had never talked with him before that night. He did not know at the time he attempted to make the arrest where the sheriff was, only the sheriff had told him where he was going.

Upon this testimony, counsel for prisoner requested the court to instruct the jury as follows:

"If you find that under-sheriff Paquin had no warrant with him at the time he attempted to arrest the prisoner, and that the sheriff had the warrant, but was not with the under-sheriff at the time of the arrest, you must acquit him."

Upon the subject of this request the court instructed the jury as follows:

"As to the second point in the case,—that is, the legal authority of the officer to make the arrest,—you are instructed in the first place that, when a man is charged with a misdemeanor as this party was,—assault and battery,—if it is not committed in the presence of the officer, the officer cannot make the arrest without a warrant. But in this case it appears undisputed that the warrant was issued by Justice Rutherford, charging the defendant with assault and battery. That warrant is in evidence, and you are instructed that any officer making an arrest under that warrant would be authorized by law, and the party resisting him would be guilty of the offense charged.

"Now, as to the condition of the parties at the time of the arrest, and what occurred, you have the questions of fact in dispute before you to decide. In the first place, you are instructed that the under-sheriff would only have authority to make the arrest under that warrant, and if he undertook

to go on his own responsibility, without this warrant and without knowing where it was, and without any direction from the officer who had it in his possession, he could not justify under that, simply on the ground that he knew such warrant had been issued; but if, on the other hand, at the time the warrant was issued, the under-sheriff was with the sheriff, and was acquainted with that fact, and the sheriff then called upon him to assist him in making the arrest, and they started out together for that common purpose, and after acting in concert the under-sheriff went to the house where he was directed to go by the sheriff, to attempt to make the arrest, and the sheriff himself was at the same time engaged upon the same enterprise, even though the warrant was not in the hands of the under-sheriff, if he was acting under the directions of his superior, and knew where he was, that he was engaged in the same enterprise and within reach, he would be justified in making the arrest, even though the sheriff was some distance away with the warrant in his possession."

The question whether an arrest can be made without warrant has been decided from time to time according to the various circumstances of each particular case, many of which may be found in 2 Hale, P. C. 72–105. The principles recognized in the cases are:

1. Any person may arrest another who is actually committing, or has actually committed, a felony.

2. He may arrest any person whom he suspects on reasonable grounds to have committed a felony, if one has actually been committed.

3. Any constable or sheriff may arrest any person whom he suspects, on reasonable grounds, of having committed a felony, whether in fact a felony has been actually committed or not.

The common law never allowed the arrest of persons, who were either guilty of or suspected of having committed misdemeanors, without a warrant issued by lawful authority, except in cases of an actual breach of the peace committed in the presence of the officer, while the person was taken in the act, or immediately after its commission. This exception was made, not to bring the offender to justice, but in order

to preserve the peace, which by the common law was regarded as of the utmost consequence.

McLean was charged simply with a misdemeanor, and he could not be arrested for the crime after the commission of the act, without a proper warrant.

The warrant was issued and delivered to the sheriff. The sheriff is authorized to take such assistance with him in making an arrest as he may deem necessary, and the warrant in his possession while present and pursuing his object will be a justification to his assistants in making the arrest. But he has no authority to send an under-sheriff or deputy to one place to make an arrest without a warrant, while he goes to another for the same purpose with the warrant. He cannot send his deputy into one town or county while he gives pursuit in another. Under the ancient practice of hue and cry, before warrants were issued, this might be done in the pursuit of felons, but no hue and cry could be raised for a misdemeanor.

We think it clear that in cases of misdemeanors the sheriff must be present either in sight or hearing, directing the arrest, to justify a person not armed with the warrant to make the arrest. Such was not the case here.

The under-sheriff had no warrant in his possession when he attempted to arrest McLean, and although acting under the orders of the sheriff, given before they separated, to search different places, the sheriff was not in such proximity, nor did he have such immediate control of the action of the under-sheriff, as justified the court or jury in saying that the warrant was in the possession or control of the under-sheriff, or that it conferred upon him any authority to make the arrest. A warrant for a misdemeanor cannot lawfully be held by two officers at once, when they are not together. The case is fully covered in the opinion of Mr. Justice CAMP-BELL in *Drennan v. People*, 10 Mich. 184 *et seq*. Upon this point there was no disagreement between the members of the

Court, although they were divided upon the question whether the offense charged was felony, and therefore authorized an arrest without warrant.

We think the judgment should be reversed, and prisoner discharged.

The other Justices concurred.