# CHARLESTON.

## STATE v. DOC WILLS.

Submitted September 26, 1922. Decided October 10, 1922.

1. CRIMINAL LAW—*One Disclosing Source of Intoxicating Liquors Immune from Prosecution, Unless Evidence Not Freely and Truthfully Given.*

   Under section 37, chapter 115, Acts 1921, which makes it unlawful for any person to have any quantity of "moonshine" liquor in his possession, and provides that if such person shall freely and fully disclose the name or names of any person or persons from whom he received it and give any other information that he may have relative to the manufacture or distribution of the same, and shall truthfully testify as to any such matters of information, he shall be immune from further prosecution or punishment, the accused has the right of election whether he will disclose such information and testify concerning the same. If at the first opportunity to do so, he offers to make such disclosure and to so testify, he can not be further prosecuted or punished unless after his disclosure has been made and his testimony has been taken it should appear that he has not fully and freely disclosed nor truthfully testified concerning such information. (p. 663).

2. SAME—*Issue as to Whether One Accused of Unlawful Possession of Liquor Was Not Entitled to Immunity, Because Evidence Not Freely Given, for the Jury.*

   If the State denies that the defendant has freely and fully made such disclosure or that he has truthfully testified concerning such matters of information, the issue joined thereon should be determined by the jury. (p. 664).

3. ARREST—*Right of Member of Department of Public Safety to Arrest Without Warrant.*

A member of Department of Public Safety may, without warrant, lawfully arrest a person, when a witness to the perpetration of the offense, whether it be a felony or misdemeanor, but he cannot, without a warrant, lawfully arrest one on mere suspicion that he is committing a misdemeanor in his presence. (p. 665).

4. SEARCHES AND SEIZURES—*One May Not be Searched Without Warrant, Except for Evidential Property or Weapons that May Assist in Escape or Result in Violence.*

It is unlawful, under section 6 of article 3 of the Constitution of this State, forbidding unreasonable searches and seizures for an officer, without a warrant authorizing it, to search a person, except that one legally arrested may be searched for property connected with the offense that may be used as evidence against him, or for weapons or things that may assist escape or acts of violence. (p. 666).

5. INTOXICATING LIQUORS—*Person May Not be Searched on Mere Suspicion of Violating the Prohibition Law or Without Search Warrant Unless Lawfully Under Arrest.*

No search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibition law in having "moonshine" liquor in his possession; or without a search warrant unless and until the alleged offender is in custody under a warrant of arrest or shall be lawfully arrested without a warrant as authorized by law. (p. 666).

6. SEARCHES AND SEIZURES—*All Unlawful Searches and Seizures Unreasonable.*

All unlawful searches and seizures are unreasonable within the meaning of the Constitutional provision forbidding unreasonable searches and seizures. (p. 666).

7. CRIMINAL LAW—*Evidence Secured by Illegal Means Not Admissible.*

Generally, the admissibility of evidence is not affected by the illegality of the means through which the evidence is obtained; but this general rule is qualified and restricted by section 5 of article 3 of the Constitution, which provides that no person in any criminal case shall be compelled to be a witness against himself, and by section 6 of the same article which inhibits unreasonable searches and seizures. (p. 667).

8.  SAME—*Neither Liquor Secured by Unlawful Search Nor Evidence Thereof Admissible.*

   And where defendant is charged with unlawfully having "moonshine" liquor in his possession, if the liquor or evidence of defendant's possession thereof has been secured through an unlawful search of his person, without a warrant for his arrest, neither the liquor so seized nor the evidence of the possession thereof so acquired is admissible against him in a prosecution for the alleged offense. (p. 667).

9.  SAME—*Objection Against Admission of Evidence Unlawfully Obtained Timely, if Offered on Trial.*

   It is unnecessary for the accused, before trial, to move the court to return the articles so illegally taken from him or to reject the evidence obtained by means of the unlawful search or seizure, in order to exclude such articles or evidence against him at the trial, but objection is properly and seasonably made, by motion, when they are offered on the trial. (p. 670).

Error to Circuit Court, Mingo county.

Doc Wills was convicted of unlawfully having in his possession a quantity of moonshine liquor, and he brings error.

*Reversed and remanded.*

*J. Walter Copley* and *Thomas West,* for plaintiff in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *W. G. Brown,* State Prohibition Commissioner, for the State.

MEREDITH, JUDGE:

Defendant was convicted of unlawfully having in his possession a quantity of "moonshine liquor," and he brings error.

But two main questions arise:

1. Does the defendant's disclosure of, or his offer to disclose and testify to, the name of the person from whom and where and when he obtained the liquor which he is charged as unlawfully having in his possession, and to give, so far as he is able, full information concerning the manufacture and distribution thereof, give him immunity from prosecution, under section 37, chapter 115, Acts 1921, or does the State

have the right to elect whether his disclosure will be accepted and further prosecution cease?

2. May evidence of the finding of "moonshine liquor," obtained by unlawful search of his person upon his unlawful arrest without a warrant, be admitted, as evidence, over his objection, upon his trial for unlawfully having "moonshine liquor" in his possession?

Promptly, upon his arraignment under the indictment, defendant tendered a plea purporting to give full information as to the person from whom, and when and where, he obtained the "moonshine liquor" which he was charged as unlawfully having in his possession, and that he had no further information as to the manufacture or distribution thereof; he, by his plea, also offered to testify as to such matters fully and freely, but the court rejected the plea. Upon the trial, being sworn as a witness, he made a like offer to testify, but this was likewise rejected. He offered two instructions to the effect that, if the jury believed from the evidence that he had fully and freely disclosed the information referred to, and had truthfully testified regarding the same, they should find him not guilty, but the court refused to give them.

The State claims it did not need his evidence; that it knew where he got his "moonshine liquor," when and the person from whom he got it; that the person who sold it to him was then under arrest; and that it had a right to elect whether it would accept or reject his offer "to turn state's evidence," as it is commonly put; that having no need of defendant's evidence, and having rejected his offer, it had the right to prosecute him for unlawfully having it in his possession. Defendant, on the other hand, claims that he, and not the state has the right to elect whether he will make disclosure, and that if he does make disclosure or offers in good faith to do so, then he is immune from prosecution or punishment. The statute under which he claims immunity is section 37, chapter 115, Acts 1921. That section makes it a felony for any person to own, operate, maintain or have in his possession, or any interest in any apparatus for the

manufacture of intoxicating liquors, commonly known as a "moonshine still"; and following the form of indictment for such offense is the paragraph creating the offense with which defendant is charged. It also contains the provision for immunity and reads:

> "Any person who has in his possession any quantity of 'moonshine liquor' shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor more than three hundred dollars, and confined in the county jail not less than thirty nor more than ninety days; *provided,* that if any such person shall fully and freely disclose the name or names of any person or persons from whom he received said moonshine liquor, and give any other information that he may have relative to the manufacture and distribution of the same, and shall truthfully testify as to any such matters of information, he shall be immune from further prosecution or punishment; and *provided, further,* that the finding of any quantity of intoxicating liquor in the possession of any person other than commercial whiskies which were obtained and stored in homes for domestic use at a time when it was lawful so to do, shall be *prima facie* evidence that the same is 'moonshine liquor.' "

It will be observed that under this section immunity is not offered to any one charged with any violation of the prohibitory law, save that of unlawfully having in his possession any quantity of "moonshine liquor." It does not apply to any one who is charged with making; or selling; or giving away; or transporting; or violating the law in any of the numerous other ways, but applies solely to the one kind of offense, to-wit: having "moonshine liquor" in possession. What did the legislature mean by the provision and what was its object? It sought to enable the state to prosecute more easily and effectively the maker or distributor of "moonshine liquor"; it provided a means of striking at its source. It knew it is much easier to locate the "moonshine liquor" than it is to locate the "moonshiner" or the "moon-

shine still'' or the distributor of the liquor, commonly called a ''boot-legger,'' and to that end it made a standing offer to one who had ''moonshine liquor'' in his possession, although that itself be a crime, that he would not be further prosecuted or punished therefor if he would fully, freely and truthfully disclose to the state from whom, when and where he got it, and furnish all the information he had concerning the manufacture and distribution thereof. It does not make a conditional offer; it is unconditional. It does not say that if the state elects to accept defendant's disclosure, it will not prosecute or punish him; but says if the defendant elects to make and makes the disclosure, it will not prosecute or punish. The election to make or not to make the disclosure is left to the defendant, not to the state. If he accepts the state's offer, the state is bound by and can not reject it.

This interpretation becomes the more apparent when we consider section 33 of chapter 32A of the Code, which provides:

> ''Any person called on behalf of the state to testify concerning any violations of this act who shall give freely and truthfully any testimony tending in any way to incriminate himself, shall be immune from prosecution under this act.''

If the state's interpretation be correct, the immunity clause in section 37, chapter 115, Acts 1921, would be useless, because of section 33 just quoted.

So we hold that the state had no election in this case; the defendant had, and he promptly exercised it when arraigned. That was his first opportunity to do so. We think also that he set it up in the proper way by tendering his offer or plea in writing. That should have been filed. The state could have replied to it generally. He was sworn as a witness on the trial, offered to testify to the facts, and made his avowal on the record. This, too, we think was proper. Whether the defendant discloses fully and freely, and truhtfully testifies as to his information is for the jury to decide, not for the court. It necessarily follows that defendant should have

had the benefit of his instruction No. 3, which is as follows:

> "The court instructs the jury that section 37 of
> chapter 115 of the Acts of the Legislature of the State
> of West Virginia, as passed in the year 1921, provides
> that any person who has in his possession any quantity
> of moonshine liquor shall be immune from any further
> prosecution if he shall fully and freely disclose the
> name or names of any person or persons from whom
> he received said moonshine liquor, and give any other
> information he may have relative to the manufacture
> and distribution of same, and shall truthfully testify
> as to any such matters of information, and if you
> believe from the evidence that the defendant, Dock
> Wills, has fully and freely disclosed the name of the
> person from whom he received the moonshine liquor
> as charged in the indictment and has freely, fully and
> truthfully testified as to any and all information which
> he may have relative to the manufacture and distribu-
> tion of same then the jury shall find him not guilty."

Instruction No. 2 is hardly broad enough to cover the case
and was properly rejected for that reason.

And so we answer the first question by saying that the
defendant has the right of election to disclose or not disclose,
and if he elects to disclose and does disclose in good faith,
and testifies truthfully, then the state can not further prose-
cute or punish him.

The second question is more important. The defendant
was arrested without a warrant. When arrested, so far as
the officer, a member of the Department of Public Safety,
could observe, defendant was violating no law. He was, in
fact, violating the law, but the officer did not know it. Why
he arrested him does not appear. The record on that point
is silent. It does show that at the time of his arrest the
liquor could not be seen. It was held in the case of *State* v.
*Lutz*, 85 W. Va. 330, 101 S. E. 434 (Syl. Pt. 9), that:

> "An offense can be said to be committed in the
> presence of an officer only when he sees it with his own
> eyes, or sees one or more of a series of acts constituting

the offense, and is aided by his other senses or by information as to others, when it may be said the offense was committed in his presence."

He was doubtless arrested on mere suspicion of having "moonshine liquor" in his possession; if so, that suspicion turned out to be well founded, but the officer does not say that he even had such suspicion. After his arrest, the officer searched his person and found two bottles of liquor on him, containing about a pint and a half. The officer had no warrant either for his arrest or search. It may be admitted that had he been lawfully arrested for the offense, then this subsequent search would have been lawful. But his arrest was unlawful, as, within the meaning of *State* v. *Lutz, supra,* there was no such offense being committed by defendant in the officer's presence as authorized the officer to arrest without a warrant. His arrest being unlawful, it necessarily follows that the subsequent search of his person was unlawful, and the evidence of his offense was unlawfully and illegally obtained. The question then arises, whether, on a trial for the offense of having the "moonshine liquor" in his possession, the liquor or any evidence of the offense, so procured by means of the unlawful search, can be given in evidence by the state over the objection of the defendant. It is not a case of lawful arrest, followed by search, where the accused claims the search unlawful, but one where both arrest and search were alike unlawful.

Counsel for defendant claim that to admit such evidence violates his rights under the fifth and sixth sections of Article 3 of the State Constitution. The fifth section provides that "No person shall be transported out of, or forced to leave the state for any offense committed within the same; nor shall any person, in any criminal case be compelled to be a witness against himself." Section six provides: "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particu-

larly describing the place to be searched, or the person or thing to be seized.''

On the other hand, counsel for the state insist that this court in *State* v. *Edwards,* 51 W. Va. 220, 41 S. E. 429, and *State* v. *Sutter,* 71 W. Va. 371, 76 S. E. 811, is committed to the doctrine that the admissibility of evidence is not affected by the illegality of the means through which the evidence has been obtained. In the Edwards case, the defendant was lawfully arrested for a felony, though the officer had no warrant and did not see him commit any crime. His person was searched and certain bank-notes, evidence of the crime of which he stood charged, were found on him. Over his objection, they were given in evidence, and this court held this was not error, saying (Syl. Pt. 6) :

> ''The instruments, devices or tokens used in the commission of a crime are competent and legitimate evidence in the trial of the accused, and the taking of them from his person by an officer who has arrested him upon a charge of his having committed the crime, is not an illegal seizure, nor is the search of his person for such instruments an unreasonable search within the meaning of the constitutional provision against unreasonable search.''

In the opinion there may be some statements which might appear to hold that no matter how illegally the evidence may be acquired this will be no ground for its rejection, but the law laid down in that case must be construed in the light of the facts in the case, and the facts show that the defendant was under lawful arrest and the search was a lawful search, hence the bank-notes, evidence of his guilt, were not obtained unlawfully. There is nothing in that case that commits this court to the state's proposition. In the Sutter case the defendant was arrested under a John Doe warrant for unlawfully having cocaine in his possession, with intent to sell it. The constable, who made the arrest testified that just before the arrest he saw the defendant making a sale of the cocaine. Under these circumstances he had a right to arrest him without a warrant; so the arrest

was lawful. He immediately searched the defendant and found three bottles of cocaine on his person. This was admitted in evidence on his trial, and this court held it was not error. There are statements in Judge BRANNON's opinion to the effect that it is no ground for the exclusion of an article of demonstrative evidence that it was taken from the possession of the accused, even though it was forcibly taken from him, as was done in the Sutter case, or that it was obtained by illegal search or seizure. However, the search and seizure in that case were lawful. The defendant was legally arrested for a felony, and the officer had a right to search him and seize the evidence of his crime. It was unnecessary for the decision in that case to hold that evidence obtained by illegal search or seizure might be admitted against the accused, and we feel that that case does not commit us to the doctrine advanced by the Attorney General; consequently the precise question at isssue is an open one.

Is it true in every case that the admissibility of evidence is not affected by the illegality of the means by which the party has been enabled to obtain the evidence? If so, then it logically follows that the liquor seized from defendant's person, though taken unlawfully, may be properly admitted as evidence against him. Stated as a general proposition, it is correct; but there are exceptions. For example, a confession of guilt extorted by duress may not be given in evidence. Why? Because its admissibility is affected by the illegality of the means by which it is obtained. On the other hand, if the confession is freely and voluntarily made, without duress or promise of reward, then it may be admitted against the accused; so we see that the legality or illegality of the means employed to obtain the confession determines whether it may or may not be admitted.

But we are told that the constitutional privilege under section 5 is strictly limited to admissions of the party, *as a witness*, and that that provision does not apply to incriminating articles taken from the accused illegally; that if the accused is required, *as a witness, under judicial process*, to produce the incriminating articles, it applies, and he can

claim his privilege; but if the state does not choose to act. under the law and pursuant to the law, but wholly without the law, it may do so,—it may forcibly and illegally seize them from the accused, either from his person or his home,. and use them against him. Possibly that might be true, if it. were not for section 6, which prohibits unreasonable searches. That prohibition was meant, not for private persons, but for the state and all its officers. Searches and seizures made by private persons or officials acting in their private capacity or for private purposes, were always against law and needed. no constitutional inhibition. We repeat that section 6 was meant for the state. It makes it unlawful for any one acting in an official capacity under governmental authority to· make unreasonable searches and seizures. It does not prohibit all searches and seizures, but only those which are unreasonable. And what are unreasonable? Certainly all those searches and seizures that are unlawful. To search. without a search warrant the person of one not charged with felony, nor committing an offense within the presence of · the officer which would authorize his arrest without a war-- rant, is an unlawful and therefore an unreasonable search; and to seize liquors, so found upon him, after such unlawful search, is an unlawful and therefore an unreasonable seizure.. Can it be said that the state can accomplish unlawfully what. it cannot accomplish lawfully? It can not by judicial process compel the accused to produce his supply of liquor and. use it against him as evidence of his crime, because this. would be compelling him to incriminate himself; this the state concedes. 3 Wigmore, Evidence, Sec. 2264. But it is argued that the state can, without the law and wholly against: the law, seize the liquor from his person and use it as evidence against him. In other words, what the state can not do lawfully, it may do unlawfully. But counsel for the state would have us hold, as indeed some courts do hold, that since the state's officer has acted beyond his authority, his. act is not the act of the state; that he, and not the state, is responsible therefor and bound thereby, and that he can be punished by the state as for contempt and be sued in.

damages by the individual wronged. That might be so; but the officer represents the state and the state by accepting the benefit of his unauthorized act and attempting to make use thereof, adopts the act as its own, and is bound thereby. The rule is firmly established that the principal who knowingly accepts the benefits of the unauthorized act of his agent confirms the act and makes it his own. *Ruffner* v. *Hewitt,* 7 W. Va. 585; *Union Bank* v. *Beirne,* 1 Gratt. (Va.) 226; *Devendorf* v. *Oil Co.,* 17 W. Va. 135; *Dewing* v. *Hutton,* 48 W. Va. 577, 37 S. E. 670. We do not understand that though the principal be a sovereign state, it is exempt from this rule. So the question in its finality comes back to the original starting point: can the state, in the face of the constitutional provision prohibiting it from making unlawful searches and seizures, upon a trial of the accused, use the incriminating articles so unlawfully seized, or use the knowledge so gained, as evidence?

The two constitutional provisions mentioned have in effect, though not in exactly the same words, been adopted in all the states, and by the United States. We are aware that many courts of very high order have given directly opposite answers to the question propounded.

Many of the authorities admit such evidence, and do so on the ground that the court should not be called upon to stop the course of the trial to inquire into the manner in which otherwise competent evidence has been secured by the state; to do so they say, introduces into the case a collateral issue. We think this ground is untenable. It is not unusual but on the contrary, common practice, to stop the course of the trial and exclude the jury, while the court hears the testimony to determine whether it is competent. The jury returns, and the evidence, if competent, is heard by it; if incompetent, it is excluded. An instance familiar to every lawyer is where the state attempts to introduce a confession, which the accused avers was obtained by duress or other unlawful means. It is done in numerous other instances, and it makes no difference whether the case be criminal or civil. The practice in no sense introduces a collateral issue.

One of the earliest cases, and most frequently cited as holding evidence illegally seized by the officer to be competent is that of *Commonwealth* v. *Dana,* 2 Metcalf (Mass.) 329. In that case certain lottery ticketst were seized. Objection to their introduction was made because, the defendant alleged, they were seized unlawfully, in contravention of the constitutional provision against unreasonable searches and seizures. The court held that they were lawfully seized under a valid search warrant and were properly admitted. Its decision was placed on the ground that they were lawfully taken. No one could object to that; but the court unnecessarily went out of its way and in its opinion said:

> "Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant was issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question. This point was decided in the cases of *Legatt* v. *Tollervey,* 14 East. 302, and *Jordan* v. *Lewis,* 14 East. 306, note."

When we look to the two English cases cited, we find that they are not strictly applicable. They were actions for malicious prosecution. The defendants had procured indictments against plaintiffs for felonies and the plaintiffs were acquitted. It was necessary to have copies of the indictments to enable the plaintiffs to maintain their actions. Under standing orders of the court which tried the indictments no copies of indictments for felonies were to be given out without special order, upon motion made in open court. Plaintiffs got copies from the clerk or keeper of the records without obtaining any order of court. They were held ad-

missible on the trial of the actions for malicious prosecution. Such are the cases that seem to have been the foundation of the broad and general rule that the admissibility of evidence is not affected by the illegality of the means by which the evidence is obtained. Here were private persons, who, contrary to court orders, obtained true copies of indictments to be used as evidence in civil actions. The clerk who delivered the copies was probably guilty of contempt of court, but in our day we would consider it a greater wrong for a high-handed and arbitrary court to enter such an order than for its clerk to disregard the rule of court. There is no similarity in the method of procuring the evidence in those cases and that of an officer procuring evidence by an unlawful search and seizure.

The government was not attempting, in those cases, to make use of the copies of the indictments. The controversies were between private individuals. There was not involved any question of unlawful search and seizure, and yet these two cases seem to have furnished the basis of many American decisions which practically nullify a most vital constitutional provision. As we see it, they started the Massachusetts court on the wrong path, and needlessly so, for its statement above quoted is wholly obiter. Other courts followed suit, and many apparently without much consideration; many without making any distinction whether the search and seizure were legal or illegal; whether search followed a legal or illegal arrest; and many, without necessity for the decision in the particular case, have stated the broad rule without qualification, and then when the particular question has arisen have held themselves bound by the prior dicta. We do not feel that we are so bound. Among the cases reaching conclusions opposed to our own are the following: *People* v. *Mayen,* 205 Pac. 435 (Cal. 1922); *State* v. *Griswold,* 67 Conn. 290, 34 Atl. 1047; *Williams* v. *State,* 100 Ga. 511, 29 S. E. 624; *Gindrat* v. *People,* 138 Ill. 103, 27 N. E. 1085, 15 Ann. Cas. 1205; *State* v. *Flynn,* 36 N. H. 64; *Chastang* v. *State,* 83 Ala. 29, 3 So. 304; *State* v. *Pomeroy,* 130 Mo. 489, 32 S. W. 1002; and *Starchman* v.

*State,* 62 Ark. 538, 36 S. W. 940. We have carefully examined them and many others, but it would be useless to attempt to analyze the views therein expressed; we do not regard them as sound and refuse to follow them. They ignore in a large measure the objects and purposes of these great constitutional guaranties by giving them a narrow construction, when they should receive a liberal construction. If we err, we would rather err on the side of liberty; and therefore adopt as the better rule that laid down by the Supreme Court of the United States.

In *Boyd* v. *United States,* 116 U. S. 619, 6 Sup. Ct. 524, 29 Law Ed. 746, Justice Bradley, in construing the Fourth and Fifth Amendments to the Federal Constitution, which are substantially like provisions in our own, after reviewing the historical events which led to their adoption, said:

> "We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the 'unreasonable searches and seizures' condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment; and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the Fifth Amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the Fourth Amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself. We think it is within the clear intent and meaning of those terms."

He reviews at length the history of the struggle against unlawful searches and seizures, holding evidence so obtained inadmissible against the accused, and the court in its syllabus says:

> "The seizure or compulsory production of a man's private papers to be used in evidence against him is

equivalent to compelling him to be a witness against himself, and in a prosecution for a crime, penalty or forfeiture, is equally within the prohibition of the Fifth Amendment.

Both amendments relate to the personal security of the citizen. They nearly run into and throw light on each other. When the thing forbidden in the Fifth Amendment, namely, compelling a man to be a witness against himself, is the object of a search and seizure of his private papers, it is an unreasonable search and seizure within the Fourth Amendment.''

Substantially the same question came again before the court in *Weeks* v. *U. S.*, 232 U. S. 383, 34 Sup. Ct. Rep. 341, 58 Law Ed. 652, L. R. A. 1915-B 834, Ann. Cas. 1915-C 1177. In that case it was held that articles illegally seized by an officer without a search warrant, from the accused's premises, and which would aid in establishing his guilt, will not be competent evidence, if a motion is made in the trial court, before the commencement of the trial, to return the articles seized in the course of the unlawful search, and objection is seasonably made to their introduction as evidence. The officers, without any search warrant, entered defendant's home and seized various articles, consisting of books, letters, money, papers, notes, evidences of indebtedness, stock certificates, insurance policies, deeds, abstracts, bonds, clothes and other property, some of which would have had a tendency to show his guilt of the offense charged against him, which was that the accused had, in violation of the criminal code, used the mails for the purpose of transporting certain tickets representing chances or shares in a lottery. Before trial defendant filed a petition setting out the manner in which they had been obtained by the officers and moved the court to return them to him, but the court refused to return to him that part of his property which it deemed pertinent evidence of the charge against him. Upon the trial, he objected to their introduction as evidence, but this was overruled, and he was convicted. On his appeal to the Supreme Court, the government contended that the letters which had

evidential value, having come into control of the court, it
would not inquire into the manner in which they were ob-
tained, but if competent, would permit their use as evidence,
but that court held that the property illegally seized by the
federal officer should have been returned, and its use upon
the trial was held error.

Again, in the case of *Silverthorn Lumber Company* v.
*U. S.*, 251 U. S. 385, 40 Sup. Ct. Rep. 182, 64 Law Ed. 319,
there was an illegal search and seizure. A clean sweep of
the company's office was made, its books, papers and docu-
ments were taken. Application was made before the Dis-
trict Court for their return, and the court ordered their
return, but before their return, the District Attorney made
and kept photographs and copies. The company was then
summoned to produce the originals. It refused and was
fined for contempt; one of the owners of the company was
ordered to be imprisoned until he should purge himself of
the contempt, which consisted in his refusal to produce the
originals. In reversing the judgment of contempt, Justice
Holmes said:

> "The government now, while in form repudiating,
> and condemning the illegal seizure, seeks to maintain
> its right to avail itself of the knowledge obtained by
> that means, which otherwise it would not have had.
> The proposition could not be presented more nakedly.
> It is that, although of course its seizure was an outrage
> which the government now regrets, it may now study
> the papers before it returns them, copy them, and then
> may use the knowledge that it has gained to call upon
> the owners in a more regular form to produce them;
> that the protection of the Constitution covers the physi-
> cal possession, but not any advantages that the gov-
> ernment can gain over the object of its pursuit by
> doing the forbidden act. *Weeks* v. *United States,* 232
> U. S. 383, 58 L. ed. 652, L. R. A. 1915-B, 834, 34 Sup.
> Ct. Rep. 341, Ann. Cas. 1915-C, 1177, to be sure, had
> established that laying the papers directly before the
> grand jury was unwarranted, but it is taken to mean

only that two steps are required instead of one. * * *
It reduces the 4th Amendment to a form of words.
232 U. S. 383. The essence of a provision forbidding
the acquisition of evidence in a certain way is that not
merely evidence so acquired shall not be used before
the court, but that it shall not be used at all. Of course
this does not mean that the facts thus obtained become
sacred and inaccessible. If knowledge of them is gained
from an independent source, they may be proved like
any others, but the knowledge gained by the govern-
ment's own wrong cannot be used by it in the way
proposed.''

A later case is that of *Gouled* v. *U. S.*, 255 U. S. 298, 65
L. ed. 647, 41 Sup. Ct. Rep. 261, where certain papers were
abstracted from defendant's offices, by one Cohen, who
entered the offices, not under a search warrant by claim of
right, but as a friend. He was a private in the army and
attached to the Intelligence Department. Gouled was sus-
pected of a conspiracy to defraud the government through
certain contracts with it for clothing and equipment, and
certain papers were taken by Cohen, not by force but by
stealth. The court held:

''An unreasonable search and seizure, in the sense
of the Fourth Amendment, does not necessarily involve
the employment of force or coercion, but is committed
when a representative of any branch or subdivision of
the Government, by stealth, through social acquaint-
ance, or in the guise of a business call, gains entrance
to the house or office of a person suspected of crime,
whether in the presence or absence of the owner, and,
in the owner's absence, searches for and abstracts his
papers without his knowledge and consent.

''The admission of a paper so obtained in evidence
against and over the objection of the owner when in-
dicted for crime, compels him to be a witness against
himself, in violation of the Fifth Amendment.''

Finally, in *Amos* v. *U. S.*, 255 U. S. 313, 65 L. ed. 654,
41 Sup. Ct. Rep. 266, defendant's premises were illegally

searched and a quantity of whiskey was found, some "blockade whiskey" and some illicitly distilled whiskey. It was held that the whiskey was relevant and material evidence of the crime charged, but inadmissible, because it was illegally seized, in violation of the constitutional provisions.

This view is sustained by the following cases from state courts: *Youman* v. *Commonwealth,* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303; *Ash* v. *Commonwealth,* 236 S. W. 1032 (Ky.); *Tucker* v. *State,* 90 So. 845 (Miss.); *Town of Blacksburg* v. *Beam,* 104 S. C. 146, 88 S. E. 441; *State* v. *Rowley,* 187 N. W. 7 (Ia.); *People* v. *Marxhausen,* 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505; *People* v. *Foreman,* 188 N. W. 375 (Mich.); *Callender* v. *State,* 136 N. E. 10 (Ind.); *State* v. *Gibbons,* 203 Pac. 390 (Wash.); *Hughes* v. *State,* 238 S. W. 588 (Tenn.).

We subscribe to the general doctrine that the admissibility of evidence is not affected by the illegality of the means by which it is secured; but where the evidence is secured by an illegal search or seizure in violation of the Constitution, the article so seized as well as the information so illegally obtained is inadmissible upon a trial of the accused. It therefore follows that the court erred in admitting such evidence, over objection of the defendant, which was seasonably made. Under the practice in this state the defendant might object to the introduction of the evidence when offered. He is not required, as he did in this case, to file his petition for the return of the seized articles, and the rejection of the evidence, to prevent their introduction against him.

We will therefore reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*