STATÉ EX REL. SADLER, RELATOR, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 5,515.)

(Submitted April 19, 1924. Decided May 3, 1924.)

[225 Pac. 1000.]

*Writ of Prohibition—Intoxicating Liquors—Unlawful Search
and Seizure—Arrest Without Warrant—Suppression of Evidence.*

Arrest—What Constitutes.
1. To constitute an "arrest," four requisites are involved: A purpose to take the person into custody of the law, under a real or pretended authority and an actual or constructive seizure or detention of his person, so understood by the person arrested.

Same—What Constitutes Constructive Arrest.
2. A constructive detention of the person sought to be arrested is accomplished by merely touching, however slightly, the body of such person by the one making the arrest and for that purpose, although he does not succeed in stopping or holding him even for an instant.

Same—Definition.
3. An "arrest" is the taking, seizing or detaining of the person of another either by touching or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest. .

Same—By Private Person—When Justifiable.
4. To entitle a private person to make an arrest under section 11754, Revised Codes of 1921, for a public offense committed or attempted in his presence, the facts and circumstances must be such that upon them alone he would be justified in making a complaint upon which a warrant might issue, *i. e.*, the facts and circumstances must be sufficient to warrant the conclusion that there is probable cause for believing that an offense is being committed.

Same—When Arrest Without Warrant Illegal.
5. An arrest without a warrant is illegal when it is made upon mere suspicion or belief, unsupported by facts, circumstances or credible information calculated to produce such suspicion or belief.

Same—By Private Person Without Warrant—Authority More Limited Than That of Officer.
6. The authority of a private person to make an arrest without a warrant is more limited than that of an officer to make a like arrest.

Intoxicating Liquor—Arrest by Private Person Without Warrant Without Probable Cause—Suppression of Evidence.
7. Evidence *held* to show that private persons employed by a county attorney to obtain proof for the prosecution of cases involving violations of the liquor laws arrested relator without a warrant and seized and searched a hand-bag in his possession without probable cause for believing that a misdemeanor was being committed in their presence, it appearing that the bag was never opened in their pres-

ence and they did not know what it contained, their information as to its contents being solely based upon the suspicions of others; hence the bag and the liquor found therein could not be used as evidence against him.

Same—Arrest by Private Person Without Warrant—Probable Cause—Insufficiency.
8. The statement of relator to private persons employed to secure evidence of violations of the liquor laws that he had made trips to Canada and secured some "good stuff" and that he expected, in the event of the appointment of a friend of his to the office of Governorgeneral of Liquor at Alberta, to make more money than any man in the state did not amount to an admission that he had liquor in his hand-bag on the train where the statement was made, and was insufficient to constitute probable cause for believing that he was then violating the law and therefore his arrest without a warrant and seizure of the bag were unlawful.

Searches and Seizures—Constitutional Provision Extends to What.
9. The constitutional provision, both federal and state, against unreasonable searches and seizures applies to a person and his baggage and personal belongings, and to the search of a person unlawfully arrested and the seizure of his belongings.

Same—When Unreasonable.
10. Any search and seizure which is unlawful is unreasonable.

Intoxicating Liquor—Unlawful Seizure—Motion to Suppress Evidence Held Timely.
11. A motion to suppress evidence about to be used in a prosecution under the liquor laws and secured by an unlawful arrest and search and seizure, filed the day before trial, *held* timely.

Same—Arrest by Private Persons—County Attorney Estopped to Deny Agency.
12. On application for a writ to prohibit the district court from using evidence of a violation of the liquor laws unlawfully obtained, after the court had denied a motion to suppress it, *held* that the county attorney who had employed as his agents the private persons who made the seizure to secure it was estopped to claim that their unlawful act was theirs and not the act of the state.

Same—Suppression of Evidence—Former Denial of Ownership of Articles No Bar to Motion.
13. The fact that relator at a former trial of a charge for the unlawful possession and transportation of liquor against him had denied ownership of a hand-bag containing liquor and that the same had been taken from him did not deprive him of the right to move prior to a retrial of the cause to suppress the evidence on the ground that in his arrest and seizure of the bag his constitutional rights had been invaded.

Original proceeding by State, on the application of C. C. Sadler for writ of prohibition directed against the District Court of the Eighth Judicial District for the County of Cascade, and J. B. Leslie, as Judge thereof, and Fred A. Ewald, County Attorney. Writ granted.

*Messrs. Ayers & Toole,* for Relator, submitted a brief; *Mr. Roy E. Ayers* argued the cause orally.

That the "*ex rel.*" proceeding in the court below was timely is borne out by the record,—it was filed on the second day after the trial was set and five days before the date of trial; and that the position to supress evidence, filed in the criminal case itself, was timely, is also borne out by the record,—it was filed the day before the date of trial and immediately after the court had ruled on the "*ex rel.*" proceeding. (See *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *In re Barber,* 281 Fed. 550.) When the question of admissibility (not ownership) of articles in evidence is raised before trial by a direct proceeding instituted to test the question as to the legality of the means by which possession of the proposed evidence (articles) has been secured, it then becomes the duty of the court to suppress the same and order its return, if not contraband, if the possession of the same has in fact been unlawfully secured by the prosecution. Such is the rule established by this court in the *Samlin Case, supra,* reaffirmed and supplemented in *State ex rel. King* v. *District Court, ante,* p. 191, and *State ex rel. Thibodeau* v. *District Court, ante,* p. 202.

Every search and every seizure which is not lawful and which is not conducted as prescribed by law comes under the ban of the fourth amendment to the federal Constitution and section 7 of Article III, Montana Constitution (*King Case, supra; State* v. *Wills,* 91 W. Va. 659, 24 A. L. R. 1398, 114 S. E. 261), and the *Samlin, King* and *Thibodeau Cases,* above cited, are illustrations of the observance by this court of the protection guaranteed by section 7 of Article III, Montana Constitution.

The right of a private citizen to arrest without a warrant or express authority must be derived either from the common law or from legislative enactment. By the common law of England neither a civil officer nor a private person had the right with-

out a warrant to make an arrest for an offense committed out of his presence except it be a felony, and then only to bring the offender before a civil magistrate. (1 Hale's Pleas of the Crown, 587–590; 2 Hale's Pleas of the Crown, 76–81, 4 Blackstone's Com. 292, 293, 296.) Our legislature broadened the common-law rule and provided that a private citizen may arrest another (1) for a public offense committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony in fact has been committed and he has reasonable cause for believing the person arrested to have committed it. (Rev. Codes 1921, sec. 11754.) In this case, the offense charged being a misdemeanor, paragraph (1) above, only is applicable. The offenses charged are transporting and possessing intoxicating liquors, and in order to warrant the action of Whittaker and Larson, must have been done to their knowledge and in their presence.

A private person may arrest another for a misdemeanor committed or attempted in his presence as provided by the Code section above quoted, but not for a misdemeanor on suspicion, no matter how well grounded. (2 R. C. L., p. 449; *Ross* v. *Leggett*, 61 Mich. 445, 1 Am. St. Rep. 608, 28 N. W. 695; *Cearity* v. *Strasbourger*, 133 App. Div. 701, 118 N. Y. Supp. 257; *Reisler* v. *Interborough R. T. Co.*, 79 Misc. Rep. 91, 139 N. Y. Supp. 335; *State ex rel. Neville* v. *Mullen*, 63 Mont. 50, 207 Pac. 634.)

*Mr. F. A. Ewald,* County Attorney of Cascade County, for Respondents, submitted a brief and argued the cause orally.

It is the contention of the respondents that relator had a remedy which he could have used if he was entitled to any and that his remedy in the district court was by making a motion to suppress the evidence and not an application for writ of prohibition, in that a writ of prohibition will not lie as against ministerial officers exercising purely ministerial functions, and that the laws of Montana have not enlarged the common-law scope of the writ. Prohibition will not lie to re-

strain a public officer from performing purely ministerial duties or from performing judicial acts within his jurisdiction. (32 Cyc. 620.) Individual officers, boards and commissioners are exempt from the writ of prohibition where their actions are ministerial or legislative. (22 R. C. L. 18.)

We further contend that a prosecuting attorney and clerk of court are purely mnisterial officers and that the prosecuting attorney in offering evidence in the case is performing purely ministerial duties, and that the only question of jurisdiction in such a case that can arise is whether or not under the facts and circumstances the district court is exceeding or acting without jurisdiction in receiving this evidence and that there is no jurisdiction or question involved by the prosecuting attorney merely offering to introduce said evidence. (22 R. C. L. 102.)

We contend that relator's application to suppress the evidence which was made on April 9, 1924, was not a timely motion, for the reason that relator knew all the facts that he sets forth in said application on or not later than March 9, 1924, and that all these facts had been brought out in the trial of his said case, which ended March 31, 1924.

It is hard to understand how the relator can claim that any of his constitutional rights have been violated. He has himself testified that the hand-bag which he is attempting to have suppressed as evidence or declared contraband did not belong to him, and that he never saw them prior to the first trial of his case on March 27, 1924. It has been held that a petition for the return of unlawfully seized property should be denied where the petitioner did not show that the seized property was his. (*Chicco* v. *United States,* 284 Fed. 434.)

Respondents further contend that Whittaker and Larson had a right to arrest Sadler because he was committing a crime in their presence. After observing Sadler throughout an afternoon and evening of a day and after Sadler had told them that he was engaging in traffic in intoxicating liquors,

he admitted to them that the hand-bag that he was then carrying contained twelve quarts of whisky.  We contend that all the facts, circumstances and conversation had with the said Sadler on said sixth day of March, 1924, showed to Whittaker and Larson that Sadler was committing a crime in their presence.  His own statement was to that effect.  The right to seize intoxicating liquors without a warrant is coextensive with the right to arrest without a warrant.  This was the rule laid down in the case of *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634.  Therefore, as Whittaker and Larson had the right to arrest Sadler for committing a crime in their presence they also had the right to seize the intoxicating liquor which he was then and there carrying with him.

HONORABLE WM. L. FORD, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, delivered the opinion of the court.

This is an original application by C. C. Sadler for a writ of prohibition directed to the district court of Cascade county and to J. B. Leslie, one of the judges thereof, and to Fred. A. Ewald, county attorney of that county, to enjoin, restrain and prohibit the use of certain articles in the trial of a criminal prosecution in said court against relator.

On the evening of March 6, 1924, one N. A. Whittaker and one Larson, who were employed by the county attorney to obtain evidence in the prosecution of cases involving the violation of the law relating to intoxicating liquors, were at Sunburst, Montana, and there saw the relator on the train going to Sweet Grass.  They got on the train and at Sweet Grass the relator got off on the left-hand side of the train looking toward the engine.  The relator at that time had a black grip or hand-bag.  They followed him to a place on the Canadian line where there was a sign, ''Taxi Office,'' over the door. Soon thereafter they saw Sadler near the train talking with a young man who had an automobile.  The young man picked

up the grip and carried it to the train, when he set it down, and relator picked it up and, using both hands, threw the same upon the platform of the Pullman car on the train and got aboard. Whittaker and Larson then boarded the train and on the way to Great Falls, Montana, on the train had a conversation with Sadler in which he informed them that he had made five extra trips besides his regular runs, up to Canada for liquor since Thanksgiving, and that on those trips he got some good stuff, and also that if his friend, a banker at Calgary, was apointed Governor-General of Liquors at Alberta, he would make more money than any man in the state of Montana. Relator was a railway conductor, and his regular run was between Great Falls and Sweet Grass, although he was not then in charge of the train but a mere passenger. When the train arrived at Great Falls, Whittaker got off first, and Sadler, carrying his grip, next, followed by Larson. When Sadler started toward the taxicabs, Whittaker stepped in front of him and told him that he was under arrest and that he wanted to search the grip, at the same time placing his arm across the front of his chest to stop relator, who told Whittaker he could not search his grip or personal belongings without a search-warrant and tried to push Whittaker aside. Whittaker testified that the reason he arrested Sadler at the depot was that he was pretty certain that there was liquor in the grip from things that he had seen, by his (Sadler's) own actions and people that he had heard talk about it; that Van Wert told him and Larson to arrest Sadler if they saw him with a grip that looked suspicious. After relator was placed under arrest, the grip and a revolver were forcibly taken from him by Whittaker and Larson; what occurred thereafter becomes unimportant.

On March 7, 1924, an information was filed against relator charging him with "the illegal transportation of intoxicating liquor" and the "illegal possession of intoxicating liquor." On the following day he was arraigned and pleaded "not

guilty'' thereto.  On March 14, 1924, the case was set for trial for March 27, 1924, upon which date the trial of the case was commenced and resulted in a disagreement of the jury.  At the trial the relator denied all the material facts above stated, and testified that the hand-bag taken from him in the scuffle was his wife's, and that it contained some of his personal effects and the revolver.  Relator denied that he was the owner of the hand-bag and intoxicating liquor alleged by Whittaker and Larson to have been taken from him, and stated that the first time he ever saw the hand-bag and intoxicating liquor was when the same were used by the state in the trial.  The case of *State of Montana* v. *C. C. Sadler* was again set to be tried on April 10, 1924.  On April 5, 1924, Sadler filed in the district court his petition for a writ of prohibition to suppress the use of the hand-bag, pistol and intoxicating liquor as evidence, directed against respondent Fred A. Ewald as county attorney, and the clerk of court, which said application was heard on the ninth day of April, 1924, and denied by the district court.  Thereafter on April 9, 1924, relator herein filed his motion to suppress said evidence, which motion the court declined to hear for the reason that the same was not timely made.

The relator contends that Whittaker and Larson had no right to arrest him when they did, and seize his grip and thereafter search the same, and that by doing so they violated his constitutional rights, as provided in section 7 of Article III of the Constitution of this state; while the respondents contend that Whittaker and Larson had the right to arrest relator and seize the grip and revolver, for the reason that relator was then committing a misdemeanor in their presence; that none of the constitutional rights of the relator were violated because upon the first trial of the case he denied that the hand-bag produced at the trial was his or the one that was taken from him, and that any whisky was taken from him.  The respondents further contend that, if Whittaker and Larson had no right to arrest relator, there was no search or seizure as con-

70 Mont.—25

templated by the Constitution, but only an overt act by private individuals.

In the determination of relator's contention we must first [1, 3] determine when the arrest was made and in that connection what constitutes an arrest. To constitute an "arrest," four requisites are involved: A purpose to take the person into the custody of the law; under a real or pretended authority; an actual or constructive seizure or detention of his person; so understood by the person arrested. (*Grissom* v. *Lawler*, 10 Ala. App. 540, 65 South. 705; *Goodell* v. *Tower*, 77 Vt. 61, 107 Am. St. Rep. 745, 58 Atl. 790; *Johnson* v. *N. & W. Ry.*, 82 W. Va. 692, 6 A. L. R. 1469, 97 S. E. 189; note, 19 Am. Dec. 485; Professor Wilgus' article on "Arrest Without a Warrant," Volume XII, No. 6, Michigan Law Review, p. 541.) A constructive detention is accomplished by merely touching, however slightly, the body of the accused by the person making the arrest and for that purpose, although he does not succeed in stopping or holding him even for an instant. (*Whitehead* v. *Keyes*, 3 Allen (Mass.), 495, 81 Am. Dec. 672; *People* v. *McLean*, 68 Mich. 480, 36 N. W. 231.) An "arrest" is the taking, seizing or detaining of the person of another either by touching, or putting hands on him, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest. (2 R. C. L., p. 445.)

From the above authorities there can be no doubt that if the relator was arrested at all, he was arrested at the depot in Great Falls, Montana, when Whittaker approached him and told him he was under arrest and placed his arm across his chest to impede his progress; so that, in determining whether the arrest of relator was lawful, only such facts and circumstances which occurred prior to such time should be considered.

A private person may arrest another for a public offense [4] committed or attempted in his presence. (Rev. Codes 1921, sec. 11754; *State* v. *Bradshaw*, 53 Mont. 96, 161 Pac. 710.)

And in the case of *State ex rel. Neville* v. *Mullen*, 63 Mont. 50, 207 Pac. 634, this court held that the proper construction of the above statute, when applied to an officer, was that the facts and circumstances must be such that upon them alone he would be justified in making a complaint upon which a warrant might issue; in other words, the facts and circumstances must be sufficient to justify the conclusion of the officer that there is probable cause for the belief that an offense is being committed in his presence; and in that case the term "probable cause" is defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." (*Burt* v. *Smith,* 181 N. Y. 1, 2 Ann. Cas. 576, 73 N. E. 495.)

It is not every idle and unreasonable charge which will [5, 6] justify an arrest. An arrest without a warrant is illegal when it is made upon mere suspicion or belief, unsupported by facts, circumstances or credible information calculated to produce such suspicion or belief (*State ex rel. Neville* v. *Mullen, supra,* at page 60, 207 Pac. 634), and the authority of a private person to arrest without a warrant is more limited than that of an officer (*Graham* v. *State,* 143 Ga. 440, Ann. Cas. 1917A, 595, 85 S. E. 328). It is not even contended by any party hereto that either Whittaker or Larson was an [7] officer. From all of the facts and circumstances hereinbefore set forth, occurring up to the time relator was arrested by Whittaker, we cannot say that they were sufficient to constitute probable cause to justify the belief in a reasonable man that a misdemeanor was being committed in his presence, which is essential for even an officer to arrest without a warrant; and, this being so, the arrest of relator was unlawful, and consequently the search and seizure of the grip and revolver were unlawful.

In the case of *State ex rel. Neville* v. *Mullen, supra,* the sheriff knew that a banquet was being given in the Hotel Deer

388 State ex rel. Sadler *v.* District Court et al. [Mar. T. '24

[70 Mont. 378.]

Lodge, and some of the persons present showed the effects of having been drinking intoxicating liquor. While the banquet was in progress, the defendant was in the alley west of the hotel. He was carrying a demijohn which was incased in a wicker cover and only partially concealed in the hand-bag. The defendant was then and for a long time prior thereto had been in the employ of one of the persons attending the banquet and the sheriff had been informed that he was transporting liquor to deliver it to his employer or to some other person at the banquet. In the instant case there is no evidence that liquor of any kind had been used by Sadler at or immediately prior to the time of his arrest, and the grip was never opened in the presence of Whittaker, and he did not know what it contained; he did not even know it was heavy, except from the manner in which the relator placed the same upon the train, and Whittaker had no information whatever as to the relator's mission to Sweet Grass. His only information was based upon **[8]** the suspicion of others. The only circumstance upon which he could base a suspicion as to what was in the grip was his conversation with relator on the train, and the only reasonable construction to be placed upon the relator's language in such conversation was that he was relating events which had occurred in the past and did not amount to an admission that his present trip to Canada was to secure intoxicating liquor or that he then had the same.

The constitutional provision, both state and federal, against **[9, 10]** unreasonable search and seizure, applies to the person and his baggage and personal belongings (*Youman* v. *Commonwealth*, 189 Ky. 152, 13 A. L. R. 1303, 224 S. W. 860), and to the search of a person unlawfully arrested and the seizure of his personal belongings (*State* v. *Wills*, 91 W. Va. 659, 24 A. L. R. 1398, 114 S. E. 261). Any search and seizure which is unlawful is unreasonable. (*State* v. *Wills, supra; State ex rel. King* v. *District Court, ante,* p. 191, 224 Pac. 862.)

This court has sufficiently reviewed the constitutional provisions and the application thereof to a case of this kind in the cases of *State ex rel. Samlin* v. *District Court*, 59 Mont. 600, 198 Pac. 362; *State ex rel. Neville* v. *Mullen*, 63 Mont. 50, 207 Pac. 634; *State ex rel. Thibodeau* v. *District Court, ante*, p. 202, 224 Pac. 866, and *State ex rel. King* v. *District Court, supra*, to which we merely refer and reaffirm the views therein expressed.

The motion made in the court below was timely. Conceding, [11] but not deciding, that the writ of prohibition directed against the county attorney and clerk of court was not the proper remedy, the motion made thereafter was timely made. (*State ex rel. Samlin* v. *District Court, supra; State ex rel. Thibodeau* v. *District Court, supra; Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. Rep. 182; *Gouled* v. *United States*, 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261; *Amos* v. *United States*, 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. Rep. 266.)

While it is true that the constitutional provisions relied upon [12] can only be invoked in this way to protect a citizen against the activities of the government, it is only when persons are acting under color of authority from the government that evidence developed in violation of the law can be at all rejected (*Hughes* v. *State*, 145 Tenn. 544, 20 A. L. R. 639, 238 S. W. 588); yet in this case the facts show that Whittaker and Larson, though not peace officers, were employed by the county attorney of Cascade county to obtain evidence to be used in the prosecution of violations of the prohibition law and were acting under his orders, and as soon as they obtained the articles in question they delivered them to the county attorney. He could not authorize or empower them to do what he or any peace officer of the state had no lawful power or authority to do; and the county attorney could not make Whittaker and Larson his agents, and then claim that the illegality was their act, and not the act of the state. (*United States* v. *Bush*

(D. C.), 269 Fed. 455; *State* v. *Wills, supra; United States* v. *Falloco* (D. C.), 277 Fed. 75.) To hold otherwise would confer more authority and greater powers upon the operatives of the county attorney than are possessed by the duly constituted officers of the state. Neither do we consider the fact [13] that the relator denied that he was the owner of the grip and whisky, produced by the state, or that the same were taken from him, as altering the conclusion herein arrived at. The facts on behalf of respondents show that Whittaker and Larson violated the constitutional rights of the relator in obtaining possession of them. There was only one grip taken from relator, and the one produced was the one Whittaker and Larson said they took from him. Such being the condition, these articles may not be admitted in evidence. (*People* v. *Vander Veen*, 214 Mich. 21, 182 N. W. 61.)

In the case of *Chicco* v. *United States* (C. C. A.), 284 Fed. 434, cited by respondents, the premises searched as well as the property taken were not those of the defendant.

Relator is entitled to the issuance of a writ prohibiting the use of the liquor and other articles seized upon the occasion of the unlawful arrest, as evidence upon the trial of the relator, as well as the evidence of the possession thereof so acquired, and to the return to him of the revolver so acquired, and it is so ordered.

*Writ issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.