# JOHN SILVA v. STATE.

No. A-582.   Opinion Filed June 20, 1911.

(116 Pac. 199.)

**EVIDENCE** — Admissibility — Search Warrant.   Evidence obtained by means of a search warrant is not inadmissible, either upon grounds that it is in the nature of admissions made under duress, or that it is evidence which the defendant has been compelled to furnish against himself, or on the ground that the evidence has been unfairly or illegally obtained, even if it appears that the search warrant was illegally issued.

(Syllabus by the Court.)

*Appeal from Pittsburg County Court; R. W. Higgins, Judge.*

John Silva was convicted of violating the prohibitory law, and appeals.   Affirmed.

*Stuart, Gordon & Liedtke,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J.   Plaintiff in error was convicted of the crime of having possession of intoxicating liquor with the intent to sell, barter, give away, and otherwise furnish said liquor, and was, on October 23, 1909, sentenced to be confined in the county jail for a period of three months, and to pay a fine of $250 and costs.

The testimony in this case is in substance as follows: Four deputy sheriffs testified that on the day of the alleged offense they went to the defendant's premises at Krebs to execute a search warrant, and there found about a dozen cases of whisky, two or three barrels of beer, and several bottles of wine; some of the beer was in the ice-box; part of the whisky was found under the floor, and the rest found in a partition wall.   They found several persons drinking beer, and a man was lying on the floor drunk.

The testimony of these witnesses was received over the objection of the defendant that the same   was incompetent and

6-Cr.—4

inadmissible for the reason that the search warrant was illegally issued, and in support of this objection the affidavit and warrant were introduced in evidence. This objection is renewed here, and it is further contended:

"That an officer executing a search warrant against a defendant, cannot testify on the trial of the defendant as to what occurred during his search, because this would be equivalent to forcing the defendant to testify against himself."

The affidavit, it appears, was made upon information and belief, and it must be conceded that the search warrant was issued without warrant of law and in violation of section 30 of the Bill of Rights, providing that:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

However, admitting that the search warrant illegally issued, and the officers in serving it exceeded their authority, this would not constitute a legal objection to the admissibility of the evidence. The accepted rule is that the admissibility of evidence is not affected by the illegality of the means through which the witnesses were enabled to obtain the evidence.

"The evidence procured by a search warrant may be used against the party; not being inadmissible as an admission under duress or compulsion, or as otherwise wrongly obtained, even if the issuing of the warrant was illegal." (Bishop's New Crim. Proc. § 246.)

See, also, *State v. Plunket,* 64 Me. 536; *State v. Flynn,* 36 N. H. 64; *Com. v. Dana,* 2 Metc. (Mass.) 329.

In the case of *Williams v. State,* 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269, Lumpkin, P. J., delivering the opinion of the court, after an elaborate review of the authorities, said:

"Irrespective of the many respectable authorities above referred to, and speaking for ourselves, we are satisfied that the contention of the accused that her constitutional rights were infringed by the ruling of the trial judge admitting the evidence complained of ought not to be sustained. As we understand it,

the main, if not the sole, purpose of our constitutional inhibitions against unreasonable searches and seizures was to place a salutary restriction upon the the powers of government. That is to say, we believe the framers of the Constitution of the United States and of this and other states merely sought to provide against any attempt, by legislation or otherwise, to authorize, justify, or declare lawful any unreasonable search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color or authority, or sought to be justified under the guise of legislative sanction. For the misconduct of private persons, acting upon their individual responsibility and of their own volition, surely none of the three divisions of government is responsible. If an official, or a mere petty agent of the state, exceeds or abuses the authority with which he is clothed, he is to be deemed as acting, not for the state, but for himself only; and therefore he alone, and not the state, should be held accountable for his acts. If the constitutional rights of a citizen are invaded by a mere individual, the most that any branch of government can do is to afford the citizen such redress as is possible, and bring the wrongdoer to account for his unlawful conduct. The office of the federal and state Constitutions is simply to create and declare these rights. To the legislative branch of government is confided the power, and upon that branch alone devolves the duty, of framing such remedial laws as are best calculated to protect the citizen in the enjoyment of such rights, and as will render the same a real, and not an empty, blessing. With faithfully enforcing such laws as are thus provided, the responsibility devolving upon the executive and judicial branches must necessarily end. We know of no law in Georgia which renders inadmissible in evidence the fruits of an illegal and wrongful search and seizure, nor are we aware of any statute from which it could be logically gathered that the admission of such evidence violates any recognized principle of public policy. Whether or not prohibiting the courts from receiving evidence of this character would have any practical and salutary effect in discouraging unreasonable searches and seizures, and thus tend

towards the preservation of the citizen's constitutional right to immunity therefrom, is a matter for legislative determination."

We have carefully examined the record and are clearly of opinion that there is no merit in this appeal.

The judgment of the county court of Pittsburg county is therefore affirmed.

FURMAN, P. J., and ARMSTRONG, J., concur.