## ROBERT J. BOONE v. STATE.

No. A-2737.   Opinion Filed April 29, 1918.

Rehearing Denied September 24, 1918.

(175 Pac. 61.)

1. **APPEAL AND ERROR—Review—Discretion of Trial Court— Ruling on Motion.** Where a motion is presented to the trial court which involves the exercise of the court's discretion, and the evidence in support of and in opposition to said motion is conflicting, and apparently equally positive on each side of the controversy, the ruling on such motion by the trial court, denying said motion, will not be disturbed by this court, as in such an instance there cannot be said to be a showing of flagrant abuse of discretion by the trial court.

2.    INDICTMENT AND INFORMATION—Venue—Information.   Information examined, and **held**, allegations are sufficient to show venue of the action to be in Muskogee county, Okla.

3.    EVIDENCE—Bank Books.  Certain records and entries in books of account kept by certain banks, and other written evidence, were admitted in evidence over the objection and exception of the defendant.  **Held**, properly admitted in this case.

4.    EVIDENCE—Means of Procuring.   The admissibility of evidence is not affected by reason of the illegality of the means through which it may have been obtained.

5.    EMBEZZLEMENT—Sufficiency of Evidence.  Evidence examined, and **held** sufficient to support the judgment.

6.    INDICTMENT AND INFORMATION—Charge of Distinct Felonies—Election.  It is only when distinct felonies, not of the same character, are charged in different counts of the same indictment or information, that the state may be required to elect upon which count it will claim a conviction.

*Appeal from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

Robert J. Boone was convicted of the crime of embezzlement and sentenced to serve a term of three years in the state penitentiary, and he appeals.   Affirmed.

*Crump, Bailey & Crump, Wash Hudson,* and *Robert J. Boone,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.   One of the many assignments of error relied upon for a reversal of this judgment of conviction is alleged misconduct on the part of one of the jurors and the prosecuting attorney, which it is claimed was prejudicial to the defendant.   During the progress of the trial, and while counsel for defendant was making the opening statement in behalf of the defendant, the wife of the defendant and a lady friend of hers, who were sitting within the bar of the court, claimed that one of the jurors smiled

and winked at the county attorney, and that he thereupon winked and smiled at one of his assistants, who was sitting near him. The affidavits of these witnesses were filed in support of a motion to discharge the panel and declare a mistrial. The trial court heard evidence in support of and against this motion. The prosecuting attorney strenuously denied the allegations of the motion under oath, and the counsel who was addressing the jury stated that he saw the juror smile, but did not notice that he winked at any time during counsel's statement. The court denied the motion to discharge the panel. At the conclusion of the trial, and as one of the grounds set forth in the motion for a new trial, this alleged misconduct on the part of the juror and the county attorney was again set forth, and at that time the court further heard the testimony of the juror whose conduct was attacked. The juror under oath specifically denied that he had either winked or smiled at the county attorney at any time during the progress of the trial.

The alleged misconduct of the said juror and the county attorney, both as a ground for declaring a mistrial and for granting a new trial, was addressed to the sound discretion of the trial court. The matters complained of do not form a statutory ground of challenge to either the individual juror or to the panel. The evidence both on the hearing to declare a mistrial and in support of the motion for a new trial was conflicting. All of the witnesses were present and were heard by the trial judge, and under such circumstances this court will not disturb a ruling on such discretionary matters, unless it clearly appears that there was a flagrant abuse of discretion on the part of the trial judge. An examination of this record does not disclose any such abuse of discretion, and it is impossible to say with certainty that such misconduct was clearly prejudicial to

the substantial rights of the defendant. Conduct of this kind, if it does occur, should meet with prompt punishment by the trial court, and we have no doubt that summary punishment would have been inflicted in this instance for such contemptuous conduct, had it been so open and flagrant as to attract the attention of the trial judge. It is not the purpose of this court to condone or ratify such actions occurring in open court; but where evidence in support of the motion and in rebuttal thereof is clearly conflicting, and apparently equally positive on each side of the controversy, the ruling of the trial court in denying such motion, where such ruling involves the determination of a question of fact, being discretionary with the trial court, this court, under such circumstances, in the absence of a showing of a flagrant abuse of discretion, will not disturb the trial court's determination.

It is also contended that the court erred in overruling the demurrer of plaintiff in error to the first count of the information. The record discloses that the jury found the defendant guilty under the charge contained in the first count. It is alleged in the brief of plaintiff in error under this assignment that the information nowhere charges that the check the defendant is charged with having embezzled was embezzled or appropriated by defendant in Muskogee county. The first count of the information is as follows (omitting the formal parts) :

"Now comes Fred P. Branson, the duly qualified and acting county attorney in and for Muskogee county, state of Oklahoma, and gives the district court of Muskogee county, state of Oklahoma, to know and be informed that Robert J. Boone did, in Muskogee county, and in the state of Oklahoma, on or about the 2d day of October, in the year of our Lord one thousand nine hundred and twelve, and anterior to the presentment hereof, commit the crime

of embezzlement in the manner and form as follows, to wit: That the said Robert J. Boone, in the county and state aforesaid, on the 2d day of October, 1912, was a duly licensed and practicing attorney at law, and as such attorney at law was the attorney for one Robert J. Glenn, guardian of Elma Glenn, a minor, in probate case No. 1408 U. S., then pending in the county court of Muskogee county, Oklahoma, and that the said Robert J. Boone, as such attorney for said Robert J. Glenn, guardian of Elma Glenn, a minor as aforesaid, was then and there intrusted with, and had in his possession and under his control by virtue of the trust relation that then and there and thereby existed between him and Robert J. Glenn as such guardian as aforesaid, moneys, checks, credits, and other representatives of value that may be charged as money and of the value of more than one thousand eight hundred and ninety-four dollars ($1,894), which had come into his possession and under his control by virtue of said trust as such attorney for said Robert J. Glenn, guardian of Elma Glenn, a minor as aforesaid, and that the said money, checks, credits, and other representatives of value were then and there the special property of the said Robert J. Glenn, guardian of Elma Glenn, a minor as aforesaid, and that the said Robert J. Boone, as such attorney, was intrusted with and had in his possession and under his control, among other property, checks, and credits, one certain check of the value of one thousand eight hundred and ninety-four dollars ($1,894), for the use of said Robert J. Glenn as guardian of Elma Glenn, a minor as aforesaid; that said check was a certain cashier's check drawn in favor of E. D. Sweeney, as cashier of the Commercial National Bank of Muskogee, Oklahoma, under date of September 30, 1912, and for the sum of one thousand eight hundred and ninety-four dollars ($1,894), indorsed by the said E. D. Sweeney in favor of the said Robert J. Glenn, guardian of Elma Glenn, a minor, and of the value of one thousand eight hundred and ninety-four dollars ($1,894), a more particular description of which check is to your informant unknown, and cannot here be given, and that the said

2—15

Robert J. Boone, attorney for the said Robert J. Glenn, guardian of Elma Glenn, as aforesaid, while he was such attorney and while he was so intrusted with said check as aforesaid, did knowingly, willfully, unlawfully, wrong-. fully, fraudulently, and feloniously embezzle, convert, and appropriate to his own use and benefit, and to a use and purpose not in due and lawful execution of his trust as aforesaid, as such attorney for the said Robert J. Glenn, guardian as aforesaid, the said check · for one thousand eight hundred and ninety-four dollars ($1,894), with the unlawful, fraudulent, and felonious intent then and there on the part of him, the said Robert J. Boone, to appropriate and convert the same to his own use and benefit, and to a use and purpose not in due and lawful execution of his trust as aforesaid, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

Section 5738, Revised Laws 1910, provides:

"The indictment or information must contain:  First, The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.  Second. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Section 5739, *Id.*, provides:

"The indictment or information must be direct and certain as it regards:  First. The party charged.  Second. The offense charged.  Third. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

Section 5746, *Id.*, provides:

"The indictment or information is sufficient if it can be understood therefrom:  First. That it is entitled in a court having authority to receive it, though the name of the court be not stated.  Second. That it was found by a

grand jury or presented by the county attorney of the county in which the court was held. Third. That the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with the statement that his true name is unknown. Fourth. That the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein. Fifth. That the offense was committed at some time prior to the time of filing the indictment or information. Sixth. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. Seventh. That the act or omission charged as the offense, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction according to the right of the case."

Section 5747, *Id.*, provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

It will be noted that in the preliminary allegation preceding the direct charging part of the indictment, it is alleged:

"That Robert J. Boone did in Muskogee county, Oklahoma, on or about the 2nd day of October, 1912, and anterior to the presentment hereof, commit the crime of embezzlement in manner and form as follows, to wit."

And then the information charges the embezzlement of a check for $1,894. This has been the customary way of drawing indictments and informations in this state since statehood, and, technically speaking, while it would be better pleading for the information to contain in the direct

charging part a more specific allegation that the acts and effects of the crime were committed in the county in which the indictment is returned or the information presented, nevertheless it is the opinion of the court that the above count of this information complies substantially with the foregoing statutes and sufficiently charges the crime of embezzlement to have been committed in Muskogee county. The defendant was not and could not have been misled by any of the allegations of this information. The demurrer thereto was properly overruled.

Among other things, counsel for defendant has presented numerous assignments of error based on the proposition that certain record evidence was admitted over the objection and exception of the defendant, without sufficient preliminary proof and to his prejudice.

First, it is contended that the court erred in admitting state's Exhibits Nos. 1, 2, and 3. Exhibit No. 1 was the record of a bond purporting to have been executed by Glenn as guardian of Elma Glenn; Exhibit No. 2 was the record of letters of guardianship issued to Glenn as guardian of Elma Glenn; and Exhibit No. 3 was the purported record of a certain mortgage executed by J. F. Paulter and wife to William L. Gilcrease, which said mortgage, the record shows, was afterwards assigned to Glenn as guardian of Elma Glenn, and the proceeds of which reached the hands of this defendant in the form of a cashier's check, which it is alleged in the first count of the indictment was embezzled by him.

We think these records were properly admitted. Nos. 1 and 2 were admissible to show the appointment and qualification of Glenn as guardian of Elma Glenn, and record evidence of this kind is admissible, where relevant, under the provisions of section 5115, Rev. Laws 1910. In

this case its admission could not be prejudicial, because the defendant admitted as a witness that Robert J. Glenn was the duly qualified and acting guardian of Elma Glenn, and also admitted that as attorney for said Glenn he came into possession of the proceeds received in payment of the Paulter mortgage. He could not, therefore, have been injured to his prejudice under the circumstances by the admission of the record evidence first complained of.

Certain entries of account kept by certain banks in which the personal funds of this defendant, and also the funds of Glenn as guardian of Elma Glenn, were kept, showing deposits and withdrawals of money by this defendant at various times closely related to the time that it is alleged that this particular embezzlement occurred, are claimed to have been erroneously admitted in evidence for the reason that the testimony offered in relation thereto was not sufficient to meet the requirements of law as to a single one of these exhibits. We have examined the record carefully in connection with these various assignments of error, and also the brief of counsel for defendant in support thereof. Before these record entries were admitted, the court required proof in some instances that they were made in due course of the bank's business, and were checked up by balances at the close of business every day, and verified as correct entries. In other instances the testimony of witnesses who made the entries was to the effect that they were correctly made. In our opinion, the proof was sufficient to meet the requirements of section 5114, Rev. Laws 1910, and the court did not commit any error prejudicial to the defendant in these respects.

It is also contended that certain reports by the guardian, Glenn, made to the probate court of Muskogee

county, covering a period from April, 1911, to May, 1913, were erroneously admitted in evidence for the reason that, while it is admitted that these were reports prepared by the defendant as attorney for Glenn, the guardian, yet there is no proof that they were in the same condition when admitted in evidence that they were in when prepared and filed by defendant as true and correct reports for the guardian. These reports were the records kept in such guardianship in the probate court, and they were admitted after proof that they had been filed for record by the guardian. They were properly verified. They were prepared by this defendant, and there was nothing on the face of the reports in any way to impeach the truth of the matters therein stated, or to show any erasures or mutilations thereof. The defendant took the witness stand in his own behalf, and did not as a witness under oath testify that there had been any change in these reports, since they were prepared and filed by him. He is in no position at this time to claim that they were improperly admitted.

The same is true as to certain correspondence between defendant and his cousin, John H. Carter, which correspondence was found in the personal files of the defendant in his former law office at Muskogee, after he had moved his law office to Tulsa, Okla. It is contended that the letter from Carter to Boone was not properly identified as having been written by Carter, and that the letter purporting to be from Boone to Carter was not shown to be a true copy of any letter written by Boone to Carter. We have examined the record carefully in regard to these contentions, and find sufficient proof as to each to authorize the court to admit these exhibits.

However, in addition, it is contended that "the introduction of these two exhibits had the effect to compel the

defendant to produce evidence against himself; that it was shown that these papers were extracted from his personal files in an office formerly occupied by him, and if they were in his files they were his private property, which no man had a right to purloin." It is contended that the taking of these exhibits from his personal files was compelling him to give evidence tending to incriminate himself, in violation of section 21, art. 2, of the Constitution. While there is no showing in this record that illegal means were used to obtain possession of this evidence, nevertheless its admissibility would not have been affected by reason of the illegality of the means through which it had been obtained. This question has heretofore been passed on by this court in the case of *Silva v. State*, 6 Okla. Cr. 97, 116 Pac. 199.

It is also contended that the verdict and judgment are contrary to the law and the evidence. We believe that the state clearly established the guilt of the defendant, and that the judgment is supported by an abundance of evidence. The record discloses that the defendant, Boone, had been from the inception of this guardianship one of a firm of attorneys representing both the guardian and the surety company which was bondsman for the guardian. He was the confidential adviser of the guardian, and, in addition thereto, no withdrawal of money could be made by the guardian from the ward's estate, by check or otherwise, until and unless such check or order had first met the approval of the guardian's attorney by being countersigned by him. This was a requirement of the surety company before it would become liable as surety on the guardian's bond. The ward's estate was a large one, being derived almost exclusively from royalties on oil produced in what is widely known as the "Glenn Pool." Many thousands of

dollars were received during the course of a year from this source and invested by the guardian in various classes of securities, principally in mortgages on real estate. The practice appeared to be to report these loans annually, and to receive the sanction of the probate court thereon. It appears that one Gilcrease, guardian of another Indian ward, had as a part of the assets of his ward's estate a loan secured by mortgage given by one Paulter and wife on certain real estate in Wagoner county, Okla. This loan he negotiated to Glenn, as guardian of Elma Glenn, with the approval of the probate court of Muskogee county in the year 1911. Said loan matured in September, 1912, at which time it was paid off by Paulter to Boone, the defendant, as attorney for Glenn, the guardian. $1,894 of this money was converted into a cashier's check and deposited by Boone in the Central State Bank of Muskogee to his personal account. Thereafter Boone checked out this money; the theory of the state being that he converted it to his own use.

Boone's theory is, while admitting that he deposited the check in his own name and drew his personal checks against same until it was exhausted, that the proceeds derived from the loan were all given to his cousin, John H. Carter, as a temporary loan by Glenn, as guardian; that he first had informed Glenn that this loan was to be made, and had received his consent to make it. Glenn specifically denies having given any consent to said loan, and denies that the defendant said anything to him about it until some months after defendant claims the loan was made. In regard to this controversy, the first written evidence of the fact that the defendant ever notified Glenn that such loan was made or intended to be made was contained in a letter to Glenn under date of April 1, 1913, at least six

months after defendant claims he had loaned the money to Carter. Said letter is as follows:

"APRIL, 1, 1913.

"Robert J. Glenn, Glenn Pool, Oklahoma—Dear Sir: We beg to hand you herewith petition for an order authorizing a loan of $2,500.00 to John H. Carter and wife, on 160 acres of land. Please sign the same and return to us at your earliest convenience, and oblige.

"Very sincerely.

"Encl. RJB—E."

Receiving no reply from Glenn to this letter, defendant again wrote Glenn on the 25th of April, 1913, to the following effect:

"APRIL 25, 1913.

"Mr. Robert J. Glenn, Glenn Pool, Oklahoma—Dear Sir: We sent you some time ago a petition for the approval of a loan to John H. Carter and wife, but so far we have not received the same from you. Please sign this petition, verify it before a notary public, and return at your earliest convenience.

"Very sincerely.

"RJB—F."

A short time thereafter Glenn answered the foregoing letters as follows:

"COLLINSVILLE, OKLAHOMA.

"Butte, Boone & Lattimore, Muskogee, Oklahoma: Inclosed you will find application for bond duly signed. This seems to have been on the road for some time. Have a court order here for loan don't think I would like it will be down in a few days to make annual report.

"Yours &c., R. J. GLENN.

"P. S.—You can file this application, sub."

On the 27th day of May, 1913, defendant made a report for the period from May 6, 1912, to May 19, 1913, to the probate court, of the various loans made out of said

ward's estate, and said report failed to enter this alleged
loan to Carter. Carter was a resident of Florida, a cousin
of the defendant, and the jury evidently concluded that no
*bona fide* loan had ever been made out of this ward's estate
at any time to Carter; that all of defendant's efforts·to
produce evidences of such a loan were mere subterfuges,
and conceived after it became known that the probate court
was making an investigation of the dealings of Glenn, as
guardian, with reference to this estate, with the purpose
in view of removing him. The evidence appears to be com-
pelling of the guilt of this defendant, and a careful perusal
of the record convinces us that the jury could have arrived
at no other logical and just conclusion.

In this connection it is contended that there is no evi-
dence which tends to establish any guilty intent on the
part of the defendant. There are numerous circum-
stances, such as evidence of other similar embezzlements
occurring about the same time from this estate and other
estates for which this defendant was acting as attorney,
with power and authority the same as in this instance.
The fact that he concealed the loan to Carter, if such loan
was ever made, for five or six months, his contradictory
statements, his admissions to Glenn, and other facts and
circumstances which it is unnecessary to enumerate, all
tended to establish the guilty intent and authorized the
jury to reach the conclusion that it was his purpose to
defraud. The contention that the judgment is not sup-
ported by sufficient evidence is clearly without merit.

The claim is also made that the court erred in refus-
ing to require the state, at the close of its evidence, on
motion by defendant, to elect upon which count of the
information it relied for conviction. The first count of
the information charged the embezzlement of the cashier's

check, the second count charged the embezzlement of the money derived from the proceeds of the check. There was no error in this respect. In the case of *Hughes v. State,* 7 Okla. Cr. 117, 122 Pac. 554, where the identical question here presented was raised, the court said:

"It is only when distinct felonies, not of the same character, are charged in different counts of the same indictment or information that the state may be required to elect upon which count it will claim a conviction."

We reach the conclusion, therefore, that there is no merit in any of the assignments of error relied upon for a reversal of this judgment. The instructions given by the court were exceedingly favorable to the defendant and presented his defense fully in every phase thereof. The question of his guilt or innocence was fairly and impartially laid before the jury, and his constitutional and statutory rights were safeguarded at every step of the trial.

The judgment of conviction is therefore affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.