F. G. GORE v. STATE.

No. A-4075.   Opinion Filed Sept. 22, 1923.

(218 Pac. 545.)

(Syllabus.)

1.  Searches and Seizures—Search Warrant—Requisites of Affidavit.  A search warrant must not be issued except upon a showing of probable cause, supported by oath or affirmation, which must set forth the facts tending to establish probable cause.  An affidavit stating mere conclusions, or made on belief without stating the facts, is insufficient, and a search warrant based upon such a showing is void.

2.  Same—"Unreasonable Search and Seizure" under Void Search Warrant.  A search and seizure forcibly made under color of a void search warrant is an "unreasonable search and seizure," within the meaning of section 30 of our Bill of Rights.

3.  Evidence—Articles Seized Under Color of Unauthorized Search

**and Seizure Inadmissible and Oral Testimony as to Articles.** Any articles, papers or property seized by the officers or agents of the court, under color of an unreasonable or unauthorized search and seizure, taken from the home, office, or private premises of one accused of an offense, should not be used as evidence against an accused, where timely objections are made to the introduction of such evidence so illegally obtained.

(a) The same rule will apply to objections made to oral testimony of the officers relating to such illegal search and seizure.

(b) The reception of evidence so obtained is in conflict with sections 21 and 30 of the Bill of Rights, giving one accused of crime immunity from becoming a witness against himself, and inhibiting unauthorized searches and seizures.

(c) The holdings of this court hitherto, so far as in conflict with the rule of evidence here announced, are overruled.

4.    **Courts—Decisions of United States Supreme Court Relating to Searches and Seizures not Binding on State Courts.** A rule of evidence established by the Supreme Court of the United States, relating to evidence illegally obtained by officers or agents of the court, by means of an illegal search and seizure, or against compelling an accused to be a witness against himself, is not binding on state courts in cases relating to like seizures in violation of like provisions in state Constitutions, but will, in the interest of uniformity of decisions, be highly persuasive.

5.    **Trial—Objection to Evidence Obtained by Illegal Search and Seizure During Trial.** The objections to such illegal evidence, if the purpose to use it is known to the accused, should be made by motion or otherwise before the trial begins; but where it appears that the state's attorney knew of the plan or acquiesced in the plan to introduce such evidence, an objection seasonably made during the trial is sufficient.

Appeal from County Court, Caddo County; C. B. Case, Judge.

F. G. Gore was convicted of unlawfully manufacturing whisky, and he appeals. Reversed and remanded.

C. H. Carswell, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.  F. G. Gore, plaintiff in error, here designated the defendant, was by information filed in the county court of Caddo county, April 27, 1921, charged with having on that day manufactured spirituous liquors by a method of distillation from some unknown substance containing alcohol as a by-product through the operation of an apparatus known as a whisky still.  At the trial, June 10, 1921, by a verdict of the jury, the defendant was found guilty as charged, without assessing the punishment.  Subsequently the court rendered judgment upon the verdict, fixing the defendant's punishment at a fine of $250 and confinement in the county jail for a period of 90 days.  From the judgment so rendered, the defendant appeals to this court.

The defendant says the judgment of the trial court should be reversed because he was convicted upon evidence forcibly and illegally obtained by the officers of the court, evidence seized and obtained by means of two void and illegal search warrants procured from a magistrate upon two affidavits of a deputy sheriff, based on information and belief only, in violation of defendant's rights under the Fourth and Fifth Amendments to the federal Constitution, and in violation of sections 21 and 30 of the Bill of Rights of our state Constitution, and of sections 2876-2880, Comp. Stat. 1921, relating to search warrants.

The Fourth Amendment to the Constitution of the United States reads thus:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation,

and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth federal Amendment, so far as here involved, reads:

"No person * * * shall be compelled in any criminal case to be a witness against himself."

Section 21 of our Bill of Rights, so far as it here applies, reads:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided."

Section 30 of our Bill of Rights is as follows:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

Section 2877, Comp. Stat. 1921, provides that a search warrant may be issued when the thing sought to be seized is in the possession of any person, with the intent to use it as a means of committing any public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing or preventing its being discovered. Section 2879, idem, provides that a magistrate must, before issuing the warrant, take, on oath, the complaint of the prosecuting witness in writing, which must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.

In this case two affidavits were made by a deputy sheriff, for the purpose of procuring two search warrants, one authorizing him to search the residence and premises belonging

to the defendant in town, and the other authorizing him to search certain premises belonging to the defendant, in the country, some distance from town. The written affidavits upon which these two search warrants were procured were in form as follows:

"Now comes W. L. Townsend, and upon oath says that he has probable cause for believing and does believe that intoxicating liquors are being manufactured, sold, bartered and given away and otherwise disposed of, and are being kept for the purpose of selling, bartering, giving away, dividing, distributing, and otherwise furnishing said liquors, in violation of the laws of the state of Oklahoma, by F. G. Gore; that said intoxicating liquors are stored and being kept in the buildings and premises on (here the premises in each instance are particularly described), and that said building is (not) the residence of said F. G. Gore, or any other person, but the same is used as a place of storage of the said intoxicating liquors."

The defendant says these two affidavits are insufficient in form and substance to authorize the issuance of search warrants, and that the two search warrants issued, based upon these affidavits, are therefore void, not being in compliance with the constitutional and statutory regulations relating to search and seizure; that the statement made in the affidavits that the affiant "has probable cause for believing and does believe that intoxicating liquors are being manufactured," etc., amounts to a complaint made on information and belief only, and does not "set forth the facts tending to establish the grounds of the application or probable cause for believing they exist," as provided in our statutes. This court is of the opinion that this objection is well taken.

In Salter v. State, 2 Okla. Cr. 464, 102 Pac. 719, 25 L. R. A. (N. S.) 60, 139 Am. St. Rep. 935, the question of the issuance of warrants, whether in felony or misdemeanor cas-

es, is ably discussed and analyzed by Judge Doyle, in which opinion the decisions of the United States Supreme Court, touching upon the question, are reviewed from the beginning, as well as the rulings of other courts, all to the effect that a complaint upon information and belief constitutes no grounds upon which a magistrate may issue a warrant. The probable cause must be shown, as distinguished from the mere information and belief of affiant.

In another opinion written by Judge Doyle, Silva v. State, 6 Okla. Cr. 97, 116 Pac. 199, this court held, among other things, that a search warrant issued upon information and belief is issued without warrant of law and in violation of section 30 of our Bill of Rights.

This rule had its origin in England, before the organization of this government. In an opinion by Chief Justice Marshall rendered in 1806, Ex parte Burford, 3 Cranch, 448, 2 L. Ed. 495, a prisoner was released because there was no sufficient affidavit made as a foundation for the warrant of arrest. There was no preliminary showing made on oath that the petitioner had committed any specific crime. The charge, such as it was, was not supported by the oath of any one having knowledge of the facts. The eminent Chief Justice said:

"If the charge against him was malicious, or grounded on perjury, whom could he sue for the malicious prosecution? or whom could he indict for perjury?"

There are authorities holding that affidavits on information and belief are sufficient grounds for the issuance of search warrants, and are sufficient compliance with federal and state Constitutions, but the holdings of this court and the weight of authority in other courts seem to be to the contrary. 16 Corpus Juris, 292.

If, however, there is any doubt that the Constitution requires that an affidavit to obtain a search warrant must show facts to warrant a magistrate to issue such warrant, as distinguished from mere information and belief of affiant, that doubt may be set at rest by section 2879, Comp. Stat. 1921, which says that the affidavit "must set forth the facts tending to establish * * * probable cause," etc.

After the search warrants in the instant case had been issued, pursuant to directions stated in the warrants, the officer Townsend went to defendant's home in Hinton, where he found a jar of whisky in a storm cave near the house, and a gallon bottle of whisky buried in the cow stable. From there the officer went to defendant's farm some miles distant in the country, where he found some empty barrels and a sack of meal near a fireplace or furnace in a thicket some distance from the house; another officer found a part of a still, a cooker, and a condenser, and in a corn crib, under lock and key, a one hundred pound sack of sugar, some mash, a funnel, and some jugs. All of these things were seized, and placed in custody of the sheriff.

Before the trial, the defendant filed a motion requesting the court to make an order excluding the use of the articles seized as evidence, and to exclude the testimony of the officers who made the seizure, in all matters relating to such seizure, on the ground that the search and seizure were made by force, and without authority of law. This motion was by the court denied. Subsequently, over the objections of the defendant, nearly all of these articles were introduced in evidence, and marked as exhibits, and the officers were permitted to explain how and where these articles were obtained.

If these affidavits were insufficient to authorize the issuance of search warrants, the warrants so issued were void,

and the officers making the search and seizure thereunder did so, in so far as the issues here are concerned, with no more authority than they would have had without a warrant of any kind. Where there is no foundation there can be no superstructure. It follows, then, that this search and seizure were illegal and ''unreasonable,'' within the meaning of both the federal and the state Constitutions, and not in keeping with the provisions of our statutes relating to search and seizure. That brings us to the question of whether the things so illegally obtained in this case could be introduced in evidence over the timely objections of the defendant.

This court has held in a number of cases, supported by the decisions of many other appellate courts of high standing, that evidence obtained by means of an illegal search and seizure is admissible; that trial courts will not inquire into the collateral issue of whether the evidence offered was obtained by the officers of the court in violation of law, directly or indirectly; in effect holding that it is sometimes necessary to condone or encourage an offense committed by an officer of the court in order to obtain evidence to convict one accused of some offense. This practice was justified on the ground that the trial courts could not halt the trial of cases to try collateral issues; but it is manifest that the more impelling reason in many instances was a consideration of expediency, in order to make possible the procuring of evidence that might not otherwise be available. In other words, this and other courts have held that the end justifies the means.

We will presently show that the Supreme Court of the United States, in several recent cases has held that this is not good law, nor even good morals, and is a practice not calculated to inspire that respect for courts and court procedure which rightfully appertains to them. If the doctrine

that the end justifies the means can be defended in any case, as in ward politics, shady business transactions, or summary punishments inflicted by self-constituted guardians of the conduct and morals of others, it certainly should not be extended to apply to courts and agents of the courts, whose primary function is to enforce impartially all the laws without condoning or encouraging the violation of any.

The guaranties of immunity from unreasonable searches and seizures, and that an accused shall not be compelled to give incriminating evidence against himself, contained in the federal Constitution, and in our state Constitution, are practically the same. Therefore, if it appears that the highest court of the land has definitely fixed a rule applying to the introduction of evidence obtained by illegal seizure, it follows without argument that the rule of evidence in the state courts, where like facts and principles of law are involved, should conform to that settled by the court having supreme prestige and authority. This is further emphasized by the decision of the Supreme Court of Oklahoma (concurred in by all the justices participating) in Hess v. State, 84 Okla. 73, 202 Pac. 310, following the construction given by the federal Supreme Court. Resting on sound principles, and to promote a uniformity of judicial decisions, it would seem that the decisions of this court should be in harmony with the constitutional construction of the issues here involved, as announced by these two courts.

The case of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647 (1921), involved the admission in evidence of a paper surreptitiously taken from the office of the accused by persons acting under the direction of the Intelligence Department of the Army; the introduction of papers taken from defendant's office, pursuant to search warrants commanding the officer to seize certain contracts

and papers used by the accused as a means of committing a felony; papers used as means of bribing an officer of the United States; and papers used in aid of the perpetration of a criminal conspiracy to defraud the United States. Concerning the rights of the people, safeguarded by the Fourth and Fifth Amendments to the Constitution, to be immune from unreasonable searches and seizures, and the immunity in a criminal case from being compelled to be a witness against oneself, Mr. Justice Clarke, speaking for the court, said:

"Such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property;' that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts, or by well-intentioned but mistakenly overzealous executive officers." Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. (N. S.) 1915B, 834, Ann. Cas. 1915C, 1177. Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319.

"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures; and if for a government officer to obtain entrance to a man's house or office by force, or by an illegal threat, or show of force, amounting to coercion, and then to search for and seize his private papers, would be an unreasonable, and therefore prohibited, search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and

privacy of the home or office, and of the papers of the owner would be as much invaded, and the search and seizure would be as much against his will in the one case as in the other; and it must therefore be regarded as equally in violation of his constitutional rights. * * *

"Upon authority of the Boyd Case, supra, this second question must also be answered in the affirmative. In practice, the result is the same to one accused of crime, whether he be obliged to supply evidence against himself, or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to give evidence against himself in a criminal case. * * *

"The wording of the Fourth Amendment implies that search warrants were in familiar use when the Constitution was adopted, and, plainly, that when issued 'upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized,' searches and seizures made under them are to be regarded as not unreasonable, and therefore not prohibited by the amendment. Searches and seizures are as constitutional under the amendment when made under valid search warrants as they are unconstitutional, because unreasonable, when made without them—the permission of the amendment has the same constitutional warrant as the prohibition has, and the definition of the former restrains the scope of the latter. All of this is abundantly recognized in the opinions of the Boyd Case, 116 U. S. 619, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524, and the Weeks Case, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177, in which it is pointed out that, at the time the Constitution was adopted, stolen or forfeited property, or property liable to duties, and concealed to avoid payment of them, excisable articles, and books required by law to be kept with respect to them, counterfeit coin, burglars' tools, and weapons, implements of gambling, 'and many other things, of like character,' might be searched for in home or office, and, if found,

might be seized under search warrants lawfully applied for, issued, and executed. * * *

"There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized, and if they be adequately described in the affidavit and warrant. Stolen or forged papers have been so seized (Langdon v. People, 133 Ill. 382, 24 N. E. 874), and lottery tickets, under a statute prohibiting their possession with intent to sell them (Com. v. Dana, 2 Metc. 329), and we cannot doubt that contracts may be so used as instruments or agencies for perpetrating frauds upon the government, as to give the public an interest in them, which would justify the search for and seizure of them, under a properly issued search warrant, for the purpose of preventing further frauds."

The claim that the character of the things seized in this case, being parts of a still, materials from which whisky could be made, and the whisky actually taken, would bring this case within the exception above mentioned, as being within the same class as counterfeit coin, burglars' tools, and implements of gambling, cannot be sustained for two reasons: First, because whatever their classification may be, they were not seized according to law; and, second, because it is manifest from this record that the purpose of the seizure was not to condemn or destroy the property, as provided by our prohibitory liquor law, but was solely for the purpose of introducing the articles in evidence. No return was made by the sheriff on these warrants, and no judicial order made to confiscate or destroy the property. For aught that appears here, as has been the practice in some places, the liquor may have finally been distributed and drunk by "courthouse fans," or by friends of persons having it in charge, or even resold. The purpose of the law is to destroy the liquor.

We do not hold that such things, when lawfully seized, may in no case be used in evidence, but we do hold that they cannot be so used where they were seized and held illegally, over the timely protest of the accused.

With the exception pointed out in the Gouled Case, supra, there is no distinction between the introduction of evidence obtained by the seizure of papers having an evidential value only, and articles which are ordinarily or may be used for an unlawful purpose. The case of Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, involved the seizure of two quart bottles and one pint bottle of whisky, taken by United States revenue officers while searching the house and store "within his curtilage." The defendant was charged with having removed whisky on which the revenue tax had not been paid, and with selling whisky on which no tax had been paid. The circumstances of the seizure in the Amos Case, as shown by the testimony of two deputy revenue collectors, were that they went to defendant's home, and, not finding him there, but finding a woman who said she was his wife, told her they were revenue officers, and had come to search the premises for "violations of the revenue law"; that thereupon the woman opened the store and the witnesses entered, and in a barrel of peas found a bottle containing not quite a half pint of illicitly distilled whisky, which they called "blockade whisky"; that they then went into the home of defendant, and, on searching, found two bottles under the quilt on the bed, one of which contained a full quart, and the other a little over a quart of illicitly distilled whisky. The government introduced in evidence a pint bottle containing whisky, which the witness Coleman stated "was not one of the bottles found by him, but that the whisky contained in the same was poured out of one of the two bottles that had been found in defendant's house on the

bed under the quilt, as stated.'' On cross-examination both witnesses testified that they did not have any warrant for the arrest of the defendant, nor any search warrant to search his house, and that the search was made during the daytime, in the absence of the defendant, who did not appear on the scene until after the search had been made. After these revenue officers had so testified, the accused made a motion to strike the testimony, because it was obtained by force, by an illegal invasion of his constitutional rights and also filed a petition for the return of the property seized. The court held that the petition to have the property returned was properly denied, as coming too late when first presented after the jury was impaneled. The motion to exclude the property and the testimony of the government agents relating thereto, after the manner of the search had been described, was by the trial court also denied. With reference to these rulings, the United States Supreme Court said:

''There is nothing in the record to indicate that the allegations of the petition for the return of the property, sworn to by the defendant, were in any respect questioned or denied, and the report of the examination and appropriate cross-examination of the government's witnesses, called to make out its case, shows clearly the unconstitutional character of the seizure by which the property which it introduced was obtained. The facts essential to the disposition of the motion were not and could not be denied; they were literally thrust upon the attention of the court by the government itself. The petition should have been granted; but, it having been denied, the motion should have been sustained.

''The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make search of it under government authority, cannot be entertained. We need not consider whether it is possible for a wife, in the absence of her husband, thus to

waive his constitutional rights, for it is perfectly clear that, under the implied coercion here presented, no such waiver was intended or effected.''

Other United States Supreme Court decisions supporting the conclusions announced in the Gouled Case and the Amos Case are Boyd v. United States, supra, and Weeks v. United States, supra.

The insidious encroachments upon the liberty and private affairs of the individual by boards, commissions, examiners, detectives, inspectors, and other agents of the state and municipalities now prevail to such an extent that self-respecting citizens, in urban communities especially, do not know in the course of a day how many rules or regulations they have violated, for which they may be subject to a penalty. If one inadvertently expectorates in the street, or parks his car at a wrong angle, or places his garbage in the wrong kind of receptacle he may be guilty of an offense. If these governmental agencies, contrary to the letter and the spirit of our Constitution, are encouraged or condoned by the courts in their invasion of the privacy of homes, offices and places of business, forcibly and without invitation, for the purpose of procuring evidence to convict one of some misdemeanor, the practice followed to its logical conclusion will make our vaunted freedom a mere pretense, valueless, and without substance. Whenever the courts actively encourage officers to procure evidence illegally by force, the officers soon become dictatorial, arrogant, and even brutal—a natural consequence of the court's approval of obtaining evidence illegally by force.

This rule of evidence is not based alone on the constitutional right of an accused to be immune from being forced to testify against himself in a criminal case. It rests in part on the principle that the courts and their agencies shall

not actively participate in procuring evidence illegally, and by a rule of evidence make nugatory the rights conferred by the Constitution. Citations and Annotations, 24 A. L. R. 1417, et seq.; State v. Wills, 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398 (1922); Tucker v. State, 128 Miss. 211, 90 South. 845, 24 A. L. R. 1377 (1922).

In the case under consideration, the officers were armed with specific, written court orders to do an illegal thing. The evidence so procured is inadmissible. The order was equivalent to no order at all. Now, suppose these officers had made this illegal search and seizure without a warrant of any kind, upon the authority of their duties as officers of the court— the evidence so obtained would be subject to the same rule. Our statutes provide that sheriffs, deputy sheriffs, and constables are peace officers, charged among other things with the duty of making arrests in the manner provided by law. Section 2471, Comp. Stat. 1921, provides:

"A peace officer may, without a warrant, arrest a person:

"First. For a public offense, committed or attempted in his presence.

"Second. When the person arrested has committed a felony, although not in his presence.

"Third. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

The making or vending of intoxicating liquor is a misdemeanor. An officer may, without a warrant, arrest one for this offense when the offense is committed in his presence, but not otherwise. Now, it may be argued that because the officer was without authority, either specific or general, he may be deemed to be a mere independent trespasser, punish-

able as such; but that any evidence obtained by means of the trespass would be admissible. The United States Supreme Court has held that this subtle line of reasoning is unsound— as in the Amos Case, where an officer goes to the residence of a suspected person, and informs him that he is an officer, and has come to search the premises for things used to commit an offense; whether actual force is used or not, he is acting under color of authority of the court for which he assumes to act, so that the court cannot later adopt, condone, or encourage such illegal act by receiving evidence so obtained to the prejudice of the accused. The court must not become a party to such illegal practices, either before or after the fact. An officer without a warrant, in his endeavors to make an arrest or a search and seizure, is acting for and in behalf of the court for which he acts in an administrative capacity. The statutes clothe him with authority without special process issued by the court, and the rules of evidence applying in a case where he goes armed with written directions of a court issued without authority of law and the rules of evidence applying to a case where an arrest or a search and seizure is made without any written directions, should be the same. In principle and effect they are the same. The evils growing out of the one are of equal magnitude with those growing out of the other.

The rule of evidence here adopted need not materially hinder or impair the efficiency of the courts or their officers in the discovery and punishment of crime. Usually the identical evidence can be obtained in a legal manner. There are justices of the peace or other magistrates in every community who, upon a proper showing, will issue search warrants, and the evidence obtained by their execution and use will not then be obtained by an "illegal search and seizure," and may be admitted. The introduction of evidence obtained

under legal search warrants, properly issued, is not forcing the accused to testify against himself; it is the use of evidence obtained as an incident to the execution of the legal processes of the court.

Many appellate courts of high standing have held that the interpretation placed on the Fourth and Fifth Amendments to the federal Constitution is not binding upon the state courts in construing like provisions in state Constitutions. The courts and the cases so holding are cited in Banks v. State, 207 Ala. 179, 93 South. 293, 24 A. L. R. 1359. Citations of state decisions in accord with the interpretation given these constitutional provisions by the United States Supreme Court, as they relate to rules of evidence, are assembled and discussed in the annotations following State v. Wills, 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398, at page 1417; those holding to the contrary, at page 1411.

The right of a state court to construe its own Constitution may be conceded, but when doing so the construction given like provisions in the federal Constitution by the United States Supreme Court should be more than persuasive, especially where the holding of the highest court is in full accord with the primary purposes of such provisions, that is, to safeguard the tranquillity and sanctity of the home and to minimize interference with private affairs.

The rule as to the introduction of evidence illegally obtained is well stated in State v. Wills, supra, thus:

"Generally, the admissibility of evidence is not affected by the illegality of the means through which the evidence is obtained; but this general rule is qualified and restricted by section 5 of article 3 of the Constitution, which provides that no person in any criminal case shall be compelled to be a witness against himself, and by section 6 of the same article, which inhibits unreasonable searches and seizures.

"It is unnecessary for the accused, before trial, * * * to move the court to return the articles so illegally taken from him or to reject the evidence obtained by means of the unlawful search or seizure, in order to exclude such articles or evidence against him at the trial, but objection is properly and seasonably made, by motion, when they are offered on the trial."

It was not the purpose of these constitutional provisions to build a wall behind which criminals could hide and escape punishment. Some of them do and will escape, but better so than to disregard these safe-guards designed to protect the innocent from being harrassed and annoyed, and sometimes abused, by trespassing officers.

The declarations of this court in the several opinions heretofore rendered which are in conflict with the principles and rule of evidence herein announced are expressly overruled. Some of these are Silva v. State, 6 Okla. Cr. 97, 116 Pac. 199; Boone v. State, 15 Okla. Cr. 29, 175 Pac. 61; Knight v. State, 16 Okla. Cr. 298, 182 Pac. 736.

The rule here announced will not necessarily apply to officers or others who may procure evidence illegally when not acting under authority or color of authority from the court or some of its agencies or beyond the pale of statutory authority.

The judgment of the trial court is reversed, and the cause remanded.

MATSON, P. J., concurs in the result.

DOYLE, J., concurs.

MATSON, P. J. (concurring). Constitutions should be liberally construed. A narrow and technical rule of construction should never be applied to any provision of the Consti-

tution. Scribner v. State, 9 Okla. Cr. 465, 132 Pac. 933, Ann. Cas. 1915B, 381; Salter v. State, 2 Okla. Cr. 464, 102 Pac. 719, 25 L. R. A. (N. S.) 60, 139 Am. St. Rep. 935.

The right of the people to be "secure in their persons, houses, papers, and effects against unreasonable searches and seizures" as provided in section 30, art. 2, Constitution of Oklahoma, was clearly violated by the search made in this case.

That right is not "secure" if the government by its own officers, and through the agency of its courts, openly and defiantly violates such provision by an unlawful search, and then permits the fruits of that search to be used as weapons of condemnation and conviction through the same channels that committed the first wrong.

It is not enough to say, in my opinion, that the courts will not stop to inquire into the legality of the means by which such evidence is obtained. Can full expression be given to the intention of our people if such rule is to prevail? I think not. Should the members of this court close their eyes to such a plain mandate against the invasion of personal liberty and domestic security? The answer is no.

I concur in the opinion in so far as it relates to the admission in evidence of property and things seized of the accused under an invalid and illegal search warrant, or where the officers of the state act without a search warrant.

I am inclined to the view that the admission of such evidence is not violative of section 21, art. 2, Constitution of Oklahoma.

Section 30, art. 2, Constitution, is self-executing. In re McNaught, 1 Okla. Cr. 528, 99 Pac. 241. The protection guaranteed to the people by such self-executing provisions

cannot obtain if the people's forums for the redress of their wrongs are to wholly ignore its plain inhibitions, and justify their conduct on grounds of necessity or expediency.

If the courts of this state will hesitate long enough to determine whether an accused's extrajudicial confession is or is not voluntary, that is, to determine whether its admission in evidence could be violative of another of accused's constitutional rights, why should not the courts hesitate here for a sufficient time to determine whether or not this constitutional right of accused has been violated by the government itself—a subtle distinction in practice without difference in principle. If an involuntary confession should not be used against accused without his consent, the fruits of an illegal seizure by government agents should not receive the sanction of evidential competency by the courts over accused's timely objection. The practice of so receiving such evidence necessarily results in widespread invasion of constitutional rights and makes of the Constitution a mockery and myth.

While this court has heretofore adhered to the view expressed by eminent authority that "it is a general rule of evidence that its competency is not affected by the fact that it was wrongfully obtained," I think, in view of the need for uniformity between the rules of evidence prevalent in the federal courts and state courts, the holding of the United States Supreme Court on this subject, as said in the majority opinion, at least should be persuasive in cases where evidence is procured by an illegal search.

Many federal and state statutes overlap, and while the provisions of the Fourth and Fifth Amendments to the federal Constitution are not applicable to the state, nevertheless sections 21 and 30 of article 2, Constitution of Oklahoma,

are substantially identical with such amendments, and the protection afforded an accused in the courts of this state should be coequal to that afforded an accused in the federal courts. As the federal courts have departed from the rule, the state courts should follow.

For reasons stated I concur in the conclusion reached that this conviction should be reversed. ·