## BYRON DRAKE v. STATE.

No. A-5336.    Opinion Filed Dec. 28, 1925.
(242 Pac. 286.)

S. B. Garrett, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J.  The information in this case charges that Byron Drake did, in Jackson county, February 9, 1924, unlawfully transport and convey "corn whisky in the quantity of one quart, in a one-half gallon glass container, from a point about 60 feet south of the Moore & Tinsley gin office in the town of Olustee" to the door of said gin office.

On the trial the jury returned a verdict of guilty, leaving the punishment to the court.  October 1, 1924, the court sentenced the defendant to pay a fine of $125 and be confined in the county jail for 40 days.  To reverse the judgment, he appeals and assigns as error that the evidence is insufficient to support a verdict, and that the court erred in the admission of illegal and incompetent evidence, and in permitting the introduction in evidence of a certain box and glass jar alleged to contain corn whisky, which was seized by the officer without a search warrant.

Eugene Tinsley, 13 years old, testified that he was standing about 60 feet from his father's gin office when a Ford car drove up and stopped and Byron Drake got out and took an inner tube box and gave it to Frank Drake; the other man in the car drove on; then they went into the gin office; that it was about 4 o'clock; that he had come from school to the gin; that after they left he went in the gin office and found a box on some sacks of cotton and a jar in the box containing about a quart of whisky; that later he told Mr. Bledsoe where it was; that the box he found was red like the box offered in evidence; that it looked just like that box.

On cross-examination, he stated he could not remember whether it was Friday or Saturday; that, when he went back to the gin, Mr. Bledsoe was there, and said he could not find it, and he got it for him in the back room; that he had often seen whisky in the gin office before, some-

times every day; that Mr. Moore and his dad both used whisky, and Mr. Richardson sometimes and Mr. Howard, the bookkeeper, sometimes took a little; that his testimony in this case was the same as on the trial of Frank Drake.

The testimony of R. B. Bledsoe, deputy sheriff, as a witness in the companion case of Frank Drake v. State, was read to the court and jury as follows:

"R. B. Bledsoe, deputy sheriff, testified that he seized about a quart of whisky in the Moore & Tinsley gin office, which was in half-gallon jar and a box, and identified the same by a label placed on the jar; that he did not have a search warrant."

It appears from the record that the testimony of this witness and the box and jar containing whisky were admitted in evidence over the defendant's objections on the ground that the officer exceeded his authority when he searched the gin office without a search warrant.

For the defense, Frank Drake, brother of the defendant, Byron Drake, testified he was visiting his mother in the town of Olustee, on account of her sickness; that with his brother, Byron, he was walking down town when a man in a Ford asked them to ride, and they got in the car and rode down to the gin office; that they were looking for their brother, J. S. Drake, who lives 12 miles southwest of Olustee, and who had come in that day to visit their sick mother; that he did not carry any box or carton from the car to the gin office, nor did his brother; that he was arrested and tried for this same offense and was acquitted; that the first time he ever saw the box, Bob Bledsoe, deputy sheriff, had it at Olustee; that his testimony in this case is the same as that given as a witness in his own behalf on his trial.

Byron Drake, as a witness in his own behalf, testified that his age was 25 years, was born and had lived in Olustee all his life; that with his brother, Frank, he left home, and, after walking about two blocks, somebody came along

and asked them to ride, they got in the car and the man drove to the gin office; there they got out, and he stepped to the door of the gin office, and his brother went in; that neither had a package of any kind at the time; that the first time he ever saw the package was when it was introduced in evidence.

Upon a careful examination and consideration of the testimony in the case, we are inclined to think that, even if its competency be admitted, it is insufficient to support the verdict. When we recall the presumption that the law always indulges in as to the innocence of one accused and the necessity of establishing the guilt of a defendant beyond a reasonable doubt, we think it would have been a proper exercise of the power vested in the trial court to have advised the acquittal of the defendant upon the ground that the evidence was insufficient.

The second contention is based on the admission of evidence secured by an illegal search. This court has held that, where the possession of an unlawful thing is open and obvious, so that any one within reasonable distance can readily see it, no search warrant is necessary, and the evidence thus obtained may be received upon the trial of an accused. However, a search implies investigation and acquiescence, and that implies some sort of force, active or constructive, much or little. The right of the citizen to be secure in his person and property from such unlawful search and seizure is as secure as the Bill of Rights can make it (Const. art. 2, § 30), and this right should be respected by officers and courts (Klein v. State, 26 Okla. Cr. 173, 223 P. 201; Gore v. State, 24 Okla. Cr. 394, 218 P. 545).

It follows that the court erred in admitting the evidence over the defendant's objections.

For the reasons indicated, the judgment of the lower court is reversed.

BESSEY, P. J., and EDWARDS, J., concur.