## JOE SULAMA v. STATE.

No. A-5999.   Opinion Filed Jan. 14, 1928.
(263 Pac. 163.)

Parkhurst & Grant, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter called the defendant, was charged by information in the

county court of Kay county, Okla., with having in his possession two gallons of whisky, "the same being a spirituous and intoxicating liquor, with the unlawful intent on the part of him, the said Joe Sulama, to barter, sell, give away, and otherwise furnish the same to persons whose names are to your informant unknown, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

He was tried and convicted and sentenced to serve a term of 30 days in the county jail and to pay a fine of $50. To reverse the judgment the defendant has appealed to this court, and has assigned four errors alleged to have been committed by the trial court. From an examination of the record we deem it necessary only to consider assignments 1 and 3, which are as follows:

"(1) Said court erred in overruling motion of plaintiff in error for a new trial."

"(3) Said court erred in admitting evidence on the part of defendant in error."

Errors 1 and 3 may be considered together, as they relate to the action of the trial court in not sustaining defendant's objection to the evidence of the state on the ground that the same was unlawfully procured. The testimony on behalf of the state is, in substance, as follows:

B. Easterday, called as a witness, testified:

That he was a deputy sheriff and traffic cop at Blackwell; that on or about the 18th day of April, 1925, he went to the Smelter Hotel, which is near the smelter in Blackwell, and went to the room of the defendant about 10 or 11 o'clock at night; when he first went to the room and knocked at the door, it took quite a while for the defendant to wake up. "We finally got him awake; we could hear him moving around the room; we told him to hurry up that we wanted to come in, and he answered that it would take time for him to dress, and about that time we heard a window go up; just as quick as I heard the window go up, I turned and ran down the hall; we found the whisky under

the window of the room of defendant on the ground right under the window; there was two gallon jugs; we did not find any whisky in defendant's room, but we did find an empty jug."

E. J. Wells and a Mr. Tomlison, in substance, corroborated B. Easterday in his testimony as to what had taken place at the hotel or rooming house when they went to it.

The defendant interposed an objection to the testimony on the ground that they came in and searched his room without having a search warrant. The state witnesses all admitted that they did not have a search warrant, but claimed that the proprietor of the house gave them permission to search. Defendant's objection to the testimony was overruled by the court, and defendant reserved his exceptions.

The testimony on behalf of the defendant was that this was where he lived while working at the smelter; that he had his room rented; that he had his window up the night these officers came in and was asleep when they came and knocked on his door; that he had a water jug in his room; and that is the only thing the officers in their search found in his room. He denied any knowledge of the whisky, and showed there was no whisky found in his room. The record in this case fails to show that the defendant had any connection with the whisky alleged to have been found on the outside of the building on the ground under the window of the defendant, except by remote circumstances. The state offered no testimony other than the testimony of B. Easterday, E. J. Wells, and Mr. Tomlinson, which testimony was procured unlawfully, neither of the officers claiming to have a search warrant, and neither to justify their acts except to testify that the proprietor of the rooming house or hotel gave them permission. The proprietor was not called, and if the proprietor had been called, under the proof in this case, he could not orally have given the officers permission to search the private room of one of his

guests who had a room rented for a definite period of time. The officers entered the private room of this defendant and searched the same without a search warrant. Their action in so doing was unlawful, and the objection of the defendant to the admission of the testimony on the ground that they had procured the evidence unlawfully was well taken. This court has passed upon this question many times. Gore v. State, 24 Okla. Cr. 394, 218 P. 545; Foley v. State, 25 Okla. Cr. 112, 219 P. 179; Dooley v. State, 25 Okla. Cr. 437, 221 P. 112; Stogsdill v. State, 36 Okla. Cr. 194, 253 P. 309; Jones v. State, 31 Okla. Cr. 77, 237 P. 468; Williams v. State, 30 Okla. Cr. 39, 234 P. 781.

There being no evidence to support the verdict and judgment without the use of the evidence which was unlawfully obtained to convict the defendant, the judgment is reversed and remanded, with directions to dismiss.

DOYLE, P. J., and EDWARDS, J., concur.